UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ISABEL P. FINLEY,<br><br>                     Plaintiff,<br><br>    v.<br><br>THOMAS H. PRZYBYLOWSKI,<br><br>                     Defendant. | Index No.<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## INTRODUCTION

Defendant Thomas Przybylowski is an accomplished young attorney who has built his practice around securities litigation in New York City. Plaintiff Isabel Finley is also a young attorney who has dedicated her career to assisting victims of gender-based violence. Prior to meeting Mr. Przybylowski, Ms. Finley's career path was a model of success and potential. She graduated from Barnard College after only three years of study and matriculated at Harvard Law School in the Fall of 2016. Ms. Finley was elected President of the Harvard Women's Law Association, the largest student organization on campus, received job offers from numerous prominent law firms in New York City (including the same firm that employed Mr. Przybylowski when they met), and had started receiving increased media attention for her fierce advocacy for women who have experienced sexual violence and gender discrimination. When the parties met, Ms. Finley was just starting to realize the potential and success created by the hard work and dedication that led her to Harvard Law School—her professional life was the very picture of promise.

Mr. Przybylowski destroyed that promise on May 27, 2018, when, shortly after

1

meeting Ms. Finley, he violently raped and sexually assaulted her. During the assault, Mr. Przybylowski forced Ms. Finley's head and mouth onto his penis after she explicitly stated she did not want to engage in oral sex; while she begged him to stop, Mr. Przybylowski openly mocked her, shouting, "Abort! Abort! Abort!" while he orally raped her after failing to get an erection. As Ms. Finley cried, Mr. Przybylowski then pushed her over on his bed and began assaulting her with his fingers and mouth before briefly vaginally raping her with his penis. Unable to escape and in pain from the violence of the assault, Ms. Finley pleaded with Mr. Przybylowski to wear a condom to prevent sexually transmitted diseases and unwanted pregnancy. Just as he did when she said no and asked him to stop forcing himself on her, Mr. Przybylowski ignored Ms. Finley's requests and refused.

Since this horrific assault, Mr. Przybylowski has carefully cultivated a public image as an upstanding attorney who cares about gender-based and domestic violence that women endure every day. He has enjoyed considerable success; he has even received an award for his support of victims of sexual violence. Moreover, he is currently a senior Associate at Pomerantz LLP, where he has had a successful career in securities litigation. Meanwhile, Ms. Finley has suffered personally and professionally for years due to the crippling and debilitating effects of Mr. Przybylowski's violent rape and sexual assault.

The profound emotional, mental, and psychological damage to Ms. Finley from Mr. Przybylowski's attack cannot be overstated. Like many victims of sexual assault—the very population on which Ms. Finley has focused her legal career—Ms. Finley suffered in shame, fear, and trauma, afraid to come forward. After seeking treatment for the trauma she experienced at Mr. Przybylowski's hands, Ms. Finley has finally summoned the courage to advocate for herself in the same way she advocates for other victims and survivors.

As such, Ms. Finley now brings this suit to recover compensatory, economic, emotional distress, and punitive damages to make her whole for Mr. Przybylowski's vicious and cruel sexual assault. In accordance with Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a jury trial of this action.

### Nature of the Suit: Sexual Assault

1. Plaintiff brings suit for Sexual Assault, Gender Motivated Violence, New York City Administrative Code § 10-1101 *et seq.*, formerly § 8-903 *et. seq*.

### The Parties

2. Isabel P. Finley is a female adult U.S. citizen domiciled in the town of Underhill in the state of Vermont.

3. Thomas H. Przybylowski is a male adult U.S. citizen domiciled in the borough of Little Silver in the state of New Jersey, upon information and belief.

### Jurisdiction and Venue

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C § 1332 because there is complete diversity of citizenship between the Plaintiff and the Defendant, and the amount in controversy exceeds $75,000. Diversity of citizenship exists because Plaintiff is a citizen of Vermont and Defendant is, upon information and belief, a citizen of New Jersey.

5. This Court has personal jurisdiction over the Defendant pursuant to the New York Long-Arm Statute, N.Y. C.P.L.R. § 302(a)(2), because Defendant committed tortious acts causing injury to Plaintiff within New York.

6. Venue is proper in this District pursuant to 28 U.S.C § 1391(b)(2), as Defendant's tortious conduct and the events giving rise to this claim occurred in this District.

## FACTUAL BACKGROUND

### Defendant's Rape and Sexual Assault of Plaintiff

7. On the evening of May 26, 2018, Plaintiff Isabel Finley was at the Manhattan apartment of her friend, Lauren Davis.

8. Plaintiff was residing in Ms. Davis's guest room for the summer while working as a Summer Associate at Davis Polk & Wardwell LLP.

9. Plaintiff and Ms. Davis left Ms. Davis's apartment to meet several of Ms. Davis's friends.

10. Later that night, Plaintiff, Ms. Davis, and Defendant met outside a bar downtown where Defendant had been involved in a brief altercation with the bartender.

11. Defendant was a colleague of Ms. Davis' at the time, as both were then working at the law firm Schulte Roth & Zabel.

12. Plaintiff, Ms. Davis, and Defendant then proceeded to Beauty Bar on East 14th Street.

13. At some point, Ms. Davis stepped away to place a call.

14. After Ms. Davis stepped away, Defendant approached Plaintiff at the bar and placed his hand on her hip.

15. Defendant kissed Plaintiff with her consent and danced with her for a short time.

16. Defendant repeatedly urged Plaintiff to leave with him, which Plaintiff initially refused because she had arranged to meet additional friends at Beauty Bar.

17. Defendant continued to urge Plaintiff to cancel her plans and leave with him.

4

18. Trusting his professional association with Ms. Davis and believing Defendant to be a lawyer of good standing, Plaintiff reluctantly agreed.

19. Sometime after midnight on May 27, 2018, Plaintiff and Defendant walked to Defendant's nearby Stuy Town apartment complex.

20. Upon entering Defendant's apartment, Defendant assured Plaintiff that his roommate was away.

21. Defendant's apartment was lit by string lights.

22. Defendant led Plaintiff directly to his bedroom where they had a second consensual kiss.

23. Defendant and Plaintiff both partially undressed in Defendant's bedroom, and Defendant pulled Plaintiff onto his bed.

24. When Defendant was unable to achieve an erection, he laid back on the bed and forcefully pressed Plaintiff's head toward his exposed genitalia and attempted to compel her to perform oral sex on him.

25. Plaintiff objected and said "No," before explaining that she had been forced to do that in the past and was not comfortable with it.

26. Plaintiff attempted to push Defendant away and stop him from forcing her head down.

27. Defendant ignored her refusal and continued to press her head downward.

28. Plaintiff began crying.

29. Defendant mocked her tears by exclaiming "Abort, abort, abort!"

30. Defendant continued to force Plaintiff's head down and to force his penis into her mouth while she continued to cry.

31. Plaintiff, alarmed by Defendant's refusal to heed her clear protests and stated lack of consent, feared for her safety.

5

32. After several minutes, Defendant abruptly pushed Plaintiff onto her back, climbed on top of her, and began to further violently sexually assault her.

33. Plaintiff became even more afraid for her safety and was scared that Defendant might seriously injure her.

34. Defendant repeatedly inserted his fingers into Plaintiff's vagina with such force that she yelped in pain.

35. Defendant bit Plaintiff's chest and genital area repeatedly, breaking the skin in multiple places.

36. Defendant repeatedly struck Plaintiff's body with his hands.

37. Defendant placed his hands around Plaintiff's throat, strangling her.

38. Plaintiff, still crying and in pain, implored Defendant to stop.

39. When it became clear that Defendant would not stop his assault and that she was being raped, Plaintiff requested that Defendant use a condom out of fear of sexually transmitted infections and unintended pregnancy.

40. Defendant ignored all such pleas.

41. Defendant then attempted vaginal intercourse, but he was unable to sustain an erection for long. This appeared to frustrate the Defendant, who reacted by becoming increasingly violent in his assault of Plaintiff.

42. Defendant then continued to sexually assault Plaintiff using his mouth and hands.

43. When Defendant ceased raping and sexually assaulting Plaintiff, she told him she was "okay" because she was terrified that any resistance might provoke further injury, and was further terrified that Defendant would not let her leave his apartment and would subject her to additional sexual assaults.

44. Plaintiff was ultimately able to persuade Defendant to let her leave his apartment and she dressed herself as quickly as possible.

### The Effects of Defendant's Violent Rape and Sexual Assault

45. Immediately upon exiting Defendant's building, Plaintiff called a close friend from law school and explained that Defendant had just sexually assaulted her and she was scared.

46. Plaintiff's law school friend calmly talked her through hailing a taxi and urged her to record details while her memory was fresh.

47. Plaintiff followed her friend's instructions and wrote notes about the assault.

48. Plaintiff returned to Ms. Davis's apartment in a state of shock and distress.

49. Plaintiff experienced heavy vaginal bleeding after the assault; the bleeding was not menstrual.

50. Despite the heavy bleeding, Plaintiff was still in shock and fearful of drawing attention to her injuries, so she attended a Connecticut wedding in the evening of May 27, 2018, as planned.

51. On May 28, 2018, at her friend's urging, Plaintiff sought medical care.

52. Multiple physician's offices either redirected her to an emergency room or offered her an appointment weeks or months later.

53. Ultimately, Plaintiff was able to secure an appointment with Planned Parenthood, who conducted an exam on May 31, 2018.

54. The medical records document Plaintiff's vaginal lacerations, extensive bleeding for several days, and Plaintiff's severe emotional distress.

55. Upon resuming her final year at Harvard Law School, Plaintiff experienced marked academic, professional, and personal decline due to the emotional distress that resulted from the rape.

56. Plaintiff struggled to attend classes, received her first Low Pass grade, and experienced significant effects of post-traumatic stress disorder (PTSD).

57. During the 2018-19 academic year, Plaintiff disclosed the assault to a select group of family members, friends, and two professors.

58. Plaintiff briefly engaged in trauma-focused therapy.

59. Plaintiff was offered an Associate position with Davis Polk & Wardwell for post-law school employment.

60. Plaintiff turned down the offer from Davis Polk & Wardwell because she could no longer endure the daily reminders of Defendant's rape and assault, which she associated with New York City and the biglaw industry.

61. Thereafter, Plaintiff accepted a position at Sanford Heisler Sharp and relocated to California.

62. In summer 2019, while preparing for the California Bar, Plaintiff again sought—but was unable to secure—ongoing trauma counseling.

63. Plaintiff contacted the Manhattan District Attorney's Office to offer herself as a witness should Defendant reoffend.

64. Prosecutors, noting the violence of the attack, sought additional information from Plaintiff and met with her in the Fall of 2019.

65. Plaintiff declined to participate in a criminal investigation of Defendant because she was overwhelmed by trauma and the effects of PTSD.

66. As a result of her inability to focus due to the emotional distress and trauma, Plaintiff was unable to study for the July 2019 California bar examination.

67. Plaintiff failed the July 2019 California bar examination.

68. Plaintiff's professional advancement was impeded by her inability to prepare for and pass the bar examination due to the emotional distress and trauma caused by Defendant's rape and sexual assault.

69. Plaintiff resumed weekly therapy, but her treatment was disrupted by the COVID-19 pandemic.

70. In November 2020, Plaintiff took medical leave due to acute mental-health challenges she experienced because of Defendant's rape and sexual assault.

71. Plaintiff's fellowship at her law firm was not extended when it ended in February 2021, nor was she offered a position as an Associate.

72. Plaintiff was unemployed from March 1 to October 7, 2021, as she continued to suffer from acute mental anguish, emotional distress, and various related physical health issues stemming from Defendant's rape and sexual assault.

73. In October 2021, Plaintiff secured and commenced a federal judicial clerkship in the District of Massachusetts.

74. Plaintiff refrained from applying for positions with firms in New York because she was still grappling with emotional distress and persistent fear associated with Defendant's rape and sexual assault.

75. Plaintiff experienced another period of unemployment from October 2022 until September 2023.

76. Plaintiff accepted a position at a small family law firm in Alaska in September 2023.

77. To this day, Plaintiff endures substantial economic losses and profound emotional and physical injuries—including but not limited to, post-traumatic stress disorder, chronic migraines, gastrointestinal issues, eczema, hypervigilance, dissociation, insomnia, difficulty concentrating, and an abiding fear of further assault, among other negative effects.

## CAUSE OF ACTION

### Count I: Gender Motivated Violence pursuant to N.Y.C. Admin. Code § 10-1103 and N.Y. Penal Law § 130.35 (Rape in the First Degree)

78. Plaintiff repeats and realleges the allegations contained in paragraphs 1-77 inclusive as if they were fully set forth herein.

79. The aforesaid actions of Defendant constitute rape in the first degree under the laws of New York; Defendant intended to engage and did engage in vaginal and oral sexual contact and intercourse with Plaintiff compelled by forcible compulsion when he used physical force to coerce Plaintiff to perform oral sex on him, forcibly violated Plaintiff vaginally with his fingers and mouth, and forced her to have vaginal intercourse with him, causing physical injury and lasting emotional harm.

80. As a result of Defendant's conduct, Plaintiff has suffered and continues to suffer economic losses, mental anguish, pain and suffering and other damages. Plaintiff is also entitled to and demands an award of attorney's fees, costs, interest, and punitive damages.

81. Defendant's actions in violation of the New York City Victims of Gender Motivated Violence Protection Act were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's rights, for which she is entitled to an award of punitive damages.

### Count II: Gender Motivated Violence pursuant to N.Y.C. Admin. Code § 10-1103 and N.Y. Penal Law § 130.20 (Sexual Misconduct)

82. Plaintiff repeats and realleges the allegations contained in paragraphs 1-77 inclusive as if they were fully set forth herein.

83. The aforesaid actions of Defendant constitute sexual misconduct under the laws of New York; Defendant intended to engage and did engage in vaginal and oral sexual contact with Plaintiff without her consent when he forced Plaintiff to perform oral sex on him and violated Plaintiff vaginally with his fingers and mouth, causing physical injury and lasting emotional harm.

84. As a result of Defendant's conduct, Plaintiff has suffered and continues to suffer economic losses, mental anguish, pain and suffering and other damages. Plaintiff is also entitled to and demands an award of attorney's fees, costs, interest, and punitive damages.

85. Defendant's actions in violation of the New York City Victims of Gender Motivated Violence Protection Act were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's rights, for which she is entitled to an award of punitive damages.

### Count III: Gender Motivated Violence pursuant to N.Y.C. Admin. Code § 10-1103 and N.Y. Penal Law § 130.65 (Sexual Abuse in the First Degree)

86. Plaintiff repeats and realleges the allegations contained in paragraphs 1-77 inclusive as if they were fully set forth herein.

87. The aforesaid actions of Defendant constitute sexual abuse in the first degree under the laws of New York; Defendant intended to and did subject Plaintiff to sexual contact by forcible

compulsion when he forced Plaintiff to perform oral sex on him and violated Plaintiff vaginally with his fingers and mouth, causing physical injury and lasting emotional harm.

88. As a result of Defendant's conduct, Plaintiff has suffered and continues to suffer economic losses, mental anguish, pain and suffering and other damages. Plaintiff is also entitled to and demands an award of attorney's fees, costs, interest, and punitive damages.

89. Defendant's actions in violation of the New York City Victims of Gender Motivated Violence Protection Act were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's rights, for which she is entitled to an award of punitive damages.

**Count IV: Gender Motivated Violence pursuant to N.Y.C. Admin. Code § 10-1103 and N.Y. Penal Law § 130.67 (Aggravated Sexual Abuse in the Second Degree)**

90. Plaintiff repeats and realleges the allegations contained in paragraphs 1-77 inclusive as if they were fully set forth herein.

91. The aforesaid actions of Defendant constitute aggravated sexual abuse in the second degree under the laws of New York; Defendant intended to and did violently, without consent, and by forcible compulsion, insert his fingers into Plaintiff's vagina, causing her to bleed for days.

92. As a result of Defendant's conduct, Plaintiff has suffered and continues to suffer economic losses, mental anguish, pain and suffering and other damages. Plaintiff is also entitled to and demands an award of attorney's fees, costs, interest, and punitive damages.

93. Defendant's actions in violation of the New York City Victims of Gender Motivated Violence Protection Act were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's rights, for which she is entitled to an award of punitive damages.

**Count V: Gender Motivated Violence pursuant to N.Y.C. Admin. Code § 10-1103 and N.Y. Penal Law § 130.52 (Forcible Touching)**

94. Plaintiff repeats and realleges the allegations contained in paragraphs 1-77 inclusive as if they were fully set forth herein.

95. The aforesaid actions of Defendant constitute forcible touching under the laws of New York; Defendant intentionally, without consent, and for no legitimate purpose, forcibly inserted his fingers into and used his mouth on the Plaintiff's vagina and labia for the purpose of gratifying his sexual desire.

96. As a result of Defendant's conduct, Plaintiff has suffered and continues to suffer economic losses, mental anguish, pain and suffering and other damages. Plaintiff is also entitled to and demands an award of attorney's fees, costs, interest, and punitive damages.

97. Defendant's actions in violation of the New York City Victims of Gender Motivated Violence Protection Act were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's rights, for which she is entitled to an award of punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court grant her the relief requested as follows:

1. An award of damages to be determined at a jury trial to compensate Plaintiff for all non-monetary and compensatory harm, including, but not limited to, compensation for her economic losses, physical injuries, pain and suffering, PTSD, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering;

13

2. An award of punitive damages, in an amount to be determined at trial, sufficient to deter Defendant from engaging in future illegal and/or wrongful conduct;

3. An award of compensatory damages for lost wages exceeding $1,800,000.00;

4. An award of costs that Plaintiff incurred in this action, as well as her reasonable attorneys' fees, to the fullest extent permitted by law;

5. Such other and further relief as the Court may deem just and proper.

Dated May 23, 2025

By: _____
Isabel P. Finley
27 Pine Ridge Road.
Underhill, VT 05489
ifinley@jd19.law.harvard.edu
(646) 402-5067