**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**ISABEL FINLEY,**

***Plaintiff,***

**v.**

**THOMAS PRZYBYLOWSKI,**

***Defendant.***

**Index No. 1:25-cv-04383-JAV**

# DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF HIS *EX PARTE* MOTION TO PROCEED UNDER PSEUDONYM AND FOR PROTECTIVE ORDER

**NESENOFF & MILTENBERG, LLP**
**363 Seventh Avenue, Fifth Floor**
**New York, New York 10001**
**(212) 736-4500**

***Attorneys for Plaintiff***

## TABLE OF CONTENTS

INTRODUCTION ........................................ 1
ARGUMENT ........................................ 1
I. Legal Standards ........................................ 1
A. The Second Circuit Balancing Test ........................................ 1
II. Defendant's Interest in Remaining Anonymous Outweighs the Need for Public Disclosure ........................................ 2
A. The Litigation Involves Matters That Are Highly Sensitive and of a Personal Nature .. 2
B. Further Identification of Defendant would Pose a Risk of Retaliatory Physical or Mental Harm to Defendant, and Would Result in Significant Harm to Defendant. ............... 5
C. Identification Presents Other, Severe Harms, Including that the Injury Litigated Against Would Be Incurred as a Result of the Disclosure of Defendant's Identity. .............. 7
D. Plaintiff Will Not Be Prejudiced by Allowing Defendant to Defend This Case Anonymously. ........................................ 10
E. There is a Weak Public Interest in Knowing Defendant's Identity. ............................ 10
F. The Defendant Has Sought to Keep His Identity Confidential.................................... 11
G. There Are Minimal Alternative Mechanisms for Protecting the Confidentiality of the Defendant. ........................................ 12
CONCLUSION ........................................ 13

## TABLE OF AUTHORITIES

**Cases**


*Doe No. 2 v. Kolko*,
242 F.R.D. 193 (E.D.N.Y. 2006) ........ 13

*Doe v. Alger*,
317 F.R.D. 37 (W.D. Va. 2016) ........ 7, 9, 12

*Doe v. Allegheny College*,
No. 17-cv-00031 (W.D.Pa. May 1, 2017) ........ 8

*Doe v. Amherst Coll.*,
238 F. Supp. 3d 195 (D. Mass. 2017) ........ 7

*Doe v. Baum*,
903 F.3d 575 (6th Cir. 2018) ........ 6

*Doe v. Boulder Valley Sch. Dist.*
*No. RE-2*, 2011 WL 3820781 (Aug. 30, 2011) ........ 14

*Doe v. Brandeis Univ.*,
177 F. Supp. 3d 561 (D. Mass. 2016) ........ 7

*Doe v. Brown Univ.*,
166 F. Supp. 3d 177 (D.R.I. 2016) ........ 7

*Doe v. Colgate Univ.*,
No. 15-CV-1069 (LEK) (DEP), 2016 WL 1448829 (N.D.N.Y. Apr. 12, 2016) ........ 6, 8, 13

*Doe v. Columbia Univ.*,
831 F.3d 46 (2d Cir. 2016) ........ 6

*Doe v. Del Rio*,
241 F.R.D. 154 (S.D.N.Y. 2006) ........ 14

*Doe v. Doe*,
No. 20-CV-5329(KAM)(CLP), 2020 WL 6900002 (E.D.N.Y. Nov. 24, 2020) ........ 15

*Doe v. George Washington Univ.*,
321 F. Supp. 3d 118 (D.D.C. 2018) ........ 6

*Doe v. Grinnell Coll.*,
No. 17-CV-00079 (RGE) (SBJ) (S.D. Iowa July 10, 2017) ........ 8

*Doe v. Middlebury*,
No. 15-CV-192 (JGM), 2015 WL 5488109 (D.Vt. Sept. 16, 2015) ........ 7

*Doe v. Pennsylvania State Univ.*,
336 F. Supp. 3d 441 (M.D. Pa. 2018) ........ 6

*Doe v. Penzato*,
10-CV-5154 (MEJ), 2011 WL 1833007 (N.D. Cal. May 13, 2011) ........ 8

*Doe v. Salisbury Univ.*,
107 F. Supp. 3d 481 (D. Md. 2015) ........ 7

*Doe v. Swarthmore College*,
No. 2:14-cv-00532-SD (E.D. Pa. Jan. 29, 2014) ........ 8

*Doe v. The Trustees of the Univ. of Pennsylvania*,
270 F. Supp. 3d 799 (E.D. Pa. 2017) .......... 7
*Doe v. Trs. of Univ. of Pennsylvania*,
No. 16-cv-05088-JP (E.D. Pa. Sept. 26, 2016) .......... 9
*Doe v. Trustees of Bos. Univ.*,
No. CV 24-10619-FDS, 2024 WL 4700161 (D. Mass. Nov. 6, 2024) .......... 10
*Doe v. Trustees of Boston Coll.*,
892 F.3d 67 (1st Cir. 2018) .......... 6
*Doe v. Univ. of Montana*,
2012 WL 2416481 (D. Mont. 2012) .......... 8
*Doe v. Univ. of S. Florida Bd. Of Trustees*, 15-CV-682-T-30 (EAJ), 2015 WL 3453753 (M.D. Fla. 2015) .......... 7
*Doe v. Univ. of S.C.*,
No. 18-CV-161 (TLW) (PJG), 2018 WL 1215045 (D.S.C. Feb. 12, 2018) .......... 7
*Doe v. Univ. of Scis.*,
No. 19-cv-00358, 2019 WL 632022 (E.D. Pa. Feb. 14, 2019) .......... 6
*Doe v. Univ. of St. Thomas*,
No. 16-CV-1127(ADM) (KMM), 2016 WL 9307609 (D. Minn. May 25, 2016) .......... 7
*Doe v. Univ. of the South*,
687 F. Supp. 2d 744 (E.D. Tenn. 2009) .......... 8
*Doe v. Virginia Polytechnic Inst. & State Univ.*,
No. 18-CV-170, 2018 WL 5929647 (W.D. Va. Nov. 13, 2018) .......... 9
*Doe v. Washington & Lee Univ.*,
No. 14-CV-00052, 2015 WL 4647996 (W.D. Va. Aug. 5, 2015) .......... 7
*Does I thru XXIII v. Advanced Textile Corp.*,
214 F.3d 1058 (9th Cir. 2000) .......... 13
*EW v. New York Blood Ctr.*,
213 F.R.D. 108 (E.D.N.Y. 2003) .......... 6, 9
*Grottano v. The City of New York,*
No. 15CIV9242RMBKNF, 2016 WL 2604803 (S.D.N.Y. Mar. 30, 2016) .......... 5
*Sealed Plaintiff v. Sealed Defendant*,
537 F.3d 185 (2d Cir. 2008) .......... 4, 15

**Other Authorities**

Brian Stelter and Tom Kludt,
NBC Fires Matt Lauer After Complaint About 'Inappropriate Sexual Behavior', CNN (Nov. 29, 2017),
https://money.cnn.com/2017/11/29/media/matt-lauer/index.html?iid=EL .......... 12
Carlsen et al.,
#MeToo Brought Down 200 Powerful Men. Nearly Half of Their Replacements are Women,

N.Y. Times, (Oct. 29, 2018),
https://www.nytimes.com/interactive/2018/10/23/us/metoo-replacements.html .................... 11
CBS News Fires Charlie Rose After Sexual Misconduct Allegations,
CBS News (Sept. 23, 2018), https://www.cbsnews.com/news/charlie-rose-fired-cbs-news-sexualmisconduct-allegations/ ........................................................................................ 12
Jon Hyman, Esq.,
Sexual Harassment is the Hiring Scarlet Letter, Workforce.com (Feb. 8, 2018), available at
https://www.workforce.com/2018/02/08/sexual-harassment-hiring-scarlet-letter/ ................. 11

## INTRODUCTION

Defendant Thomas Przybylowksi ("Defendant"), by his attorneys, Nesenoff & Miltenberg, LLP, hereby respectfully requests this Court to: (i) permit Defendant to proceed in the above-captioned matter under the pseudonym John Doe[1]; and (ii) issue a protective order precluding Plaintiff (and her agents, employees, and representatives) from disclosing Defendant's identity, through court filings or otherwise. In light of the serious nature of the allegations contained in the Complaint which has already led to Defendant's termination from his employment, Defendant is justifiably concerned about the possibility of acts of reprisal that could further prevent Defendant from proceeding with his future endeavors and inflict further harm. Defendant's identity, as described in the Complaint, should not be disclosed to the public due to the nature of the allegations in said Complaint. *See* Declaration of Thomas Przybylowski, attached to Defendant's *Ex Parte* Motion to Proceed Under Pseudonym and for Protective Order.

## ARGUMENT

### I. Legal Standards

#### A. The Second Circuit Balancing Test

The Second Circuit has identified the relevant inquiry on a motion to proceed by pseudonym as "a balancing test that weighs the plaintiff's need for anonymity against countervailing interests in full disclosure." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 189 (2d Cir. 2008) (reversing district court's denial of plaintiff's motion to proceed by pseudonym, where plaintiff was suing state and municipal officers for sexual assault). In balancing these interests, the reviewing court looks to the following non-exhaustive factors:

> (1) whether the litigation involves matters that are highly sensitive and [of a] personal nature; (2) whether identification poses a risk of retaliatory physical or mental harm to the . . . party [seeking to

[1] Defendant does not oppose Plaintiff proceeding by pseudonym.

> proceed anonymously] or even more critically, to innocent non-parties; (3) whether identification presents other harms and the likely severity of those harms, including whether the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity; (4) whether the plaintiff is particularly vulnerable to the possible harms of disclosure, particularly in light of his age; (5) whether the suit is challenging the actions of the government or that of private parties; (6) whether the defendant is prejudiced by allowing the plaintiff to press his claims anonymously, whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court; (7) whether the plaintiff's identity has thus far been kept confidential; (8) whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose his identity; (9) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities; and (10) whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff.
>
> *Id.* at 190 (alterations in original) (internal quotations and citations omitted); *see also Grottano v. The City of New York,* No. 15CIV9242RMBKNF, 2016 WL 2604803, at *2 (S.D.N.Y. Mar. 30, 2016).

When the factors favoring non-disclosure outweigh the factors favoring public access, the reviewing court should grant the movant's motion to proceed by pseudonym. As explained in further detail below, an evaluation of the relevant factors in this case militates in favor of permitting Defendant to proceed pseudonymously[2].

## II. Defendant's Interest in Remaining Anonymous Outweighs the Need for Public Disclosure

### A. The Litigation Involves Matters That Are Highly Sensitive and of a Personal Nature

Defendant should be permitted to proceed under a pseudonym given the highly sensitive and personal nature of this litigation. As is evident from the Complaint, the claims which form the subject of this Complaint involve extremely intimate, graphic, sexual acts. Defendant respectfully

[2] Prongs 4 and 5 do not apply to this matter and are not addressed herein.

suggests that the need for privacy of the involved individuals significantly outweighs the general public's need to know their identities.

Further, Defendant does not merely contend that the revelation of his name would result in embarrassment or public humiliation. Rather, Defendant notes the highly sensitive issues involved with claims of sexual assault. Moreover, recognizing the delicate nature of cases such as the one at bar, courts across the country have routinely permitted similarly situated movants—individuals falsely accused of sexual misconduct and/or intimate partner violence—to proceed by pseudonym, acknowledging the great danger such individuals face in proceeding under their own names, and the futility of the lawsuit if the allegations will be forever publicly associated with individuals' names. "[I]n lawsuits centering around sexual activity and behavior, a plaintiff is entitled to proceed under a pseudonym where revealing the plaintiff's name subjects him or her to the risk of public disapproval, harassment, or bodily harm." *EW v. New York Blood Ctr*., 213 F.R.D. 108, 111 (E.D.N.Y. 2003).

As the District Court for the Northern District of New York has explained, "protecting the anonymity of sexual assault victims and those accused of committing sexual assault can be an important safeguard to ensure that the due process rights of all parties are protected." *Doe v. Colgate Univ.*, No. 15-CV-1069 (LEK) (DEP), 2016 WL 1448829, at *2 (N.D.N.Y. Apr. 12, 2016) (emphasis added). *See also Doe v. Baum*, 903 F.3d 575 (6th Cir. 2018) (student found responsible for sexual misconduct); *Doe v. Columbia Univ.*, 831 F.3d 46 (2d Cir. 2016) (student found responsible for sexual misconduct); *Doe v. Univ. of Scis.*, No. 19-cv-00358, 2019 WL 632022, at *1 (E.D. Pa. Feb. 14, 2019) (plaintiff permitted to proceed as John Doe without formal motion practice); *Doe v. Trustees of Boston Coll*., 892 F.3d 67 (1st Cir. 2018); *Doe v. Pennsylvania State Univ*., 336 F. Supp. 3d 441, 442 (M.D. Pa. 2018); *Doe v. George Washington Univ*., 321 F. Supp.

3d 118 (D.D.C. 2018) (plaintiff student found responsible for sexual assault in university Title IX proceeding); *Doe v. Univ. of S.C.*, No. 18-CV-161 (TLW) (PJG), 2018 WL 1215045, at *1 (D.S.C. Feb. 12, 2018) ("Doe has demonstrated compelling interests in anonymity in this matter because of the personal and sensitive nature of the underlying facts of this case, which involve allegations of sexual assault."), report and recommendation adopted, 2018 WL 1182508 (D.S.C. Mar. 6, 2018); *Doe v. The Trustees of the Univ. of Pennsylvania*, 270 F. Supp. 3d 799, 805 (E.D. Pa. 2017) (plaintiff student found responsible for sexual assault in university Title IX proceeding); *Doe v. Amherst Coll*., 238 F. Supp. 3d 195, 202 n.1 (D. Mass. 2017) (noting court had previously granted plaintiff's pseudonym motion, where plaintiff student was found responsible for sexual misconduct in school Title IX proceeding); *Doe v. Brown Univ*., 166 F. Supp. 3d 177 (D.R.I. 2016) (plaintiff student found responsible for sexual assault permitted to proceed as John Doe); *Doe v. Univ. of St. Thomas*, No. 16-CV-1127(ADM) (KMM), 2016 WL 9307609, at *2 (D. Minn. May 25, 2016) ("In cases involving intensely personal matters, the normal practice of disclosing the parties' identities yields to a policy of protecting privacy. . . . The complaint and its supporting documents describe very private sexual acts, whether consensual or not, between two young college students, and it is difficult to imagine any resolution of this case without further exploration of truly intimate matters." (citations omitted)); *Doe v. Brandeis Univ*., 177 F. Supp. 3d 561 (D. Mass. 2016) (student found responsible for sexual assault); *Doe v. Alger*, 317 F.R.D. 37, 40 (W.D. Va. 2016) (granting motion to proceed as pseudonym by student found responsible for sexual misconduct); *Doe v. Middlebury*, No. 15-CV-192 (JGM), 2015 WL 5488109 (D.Vt. Sept. 16, 2015) (student found responsible for sexual misconduct); *Doe v. Univ. of S. Florida Bd. Of Trustees*, 15-CV-682-T-30 (EAJ), 2015 WL 3453753 (M.D. Fla. 2015) (student accused of battery, threats, and violence against girlfriend); *Doe v. Salisbury Univ*., 107 F. Supp. 3d 481 (D. Md.

2015) (student accused of sexual assault); *Doe v. Washington & Lee Univ*., No. 14-CV-00052, 2015 WL 4647996 (W.D. Va. Aug. 5, 2015) (student expelled after finding of nonconsensual intercourse); *Doe v. Univ. of Montana*, 2012 WL 2416481 (D. Mont. 2012) ("With respect to the individual students involved in the Student Conduct Code proceeding, as well as the witnesses . . . involved in that proceeding, the Court finds that the interests of those individuals in avoiding undue embarrassment, harassment, and disclosure of sensitive private information outweigh the public's need to know their names." (citing Plaintiffs I–XXIII v. Advanced Textile Corp., 214 F.3d 1058, 1068–69 (9th Cir.2000))); *Doe v. Univ. of the South*, 687 F. Supp. 2d 744 (E.D. Tenn. 2009) (student found responsible for sexual misconduct); *Doe v. Penzato*, 10-CV-5154 (MEJ), 2011 WL 1833007, at *3 (N.D. Cal. May 13, 2011) (granting motion by plaintiff alleging sexual assault to proceed as pseudonym); *Doe v. Grinnell Coll*., No. 17-CV-00079 (RGE) (SBJ) (S.D. Iowa July 10, 2017), ECF No. 39 (finding "the determinative factor here is that disclosure of plaintiff's identity would cause the injury litigated against to be incurred as a result of the disclosure"); *Doe v. Allegheny College*, No. 17-cv-00031 (W.D.Pa. May 1, 2017), ECF No. 18 (granting plaintiff's motion to proceed by pseudonym); *Doe v. Swarthmore College*, No. 2:14-cv-00532-SD (E.D. Pa. Jan. 29, 2014), ECF No. 3 (finding the balance in favor of anonymity "compelling").

Thus, factor one weighs heavily in favor of non-disclosure.

**B. Further Identification of Defendant would Pose a Risk of Retaliatory Physical or Mental Harm to Defendant, and Would Result in Significant Harm to Defendant.**

Defendant should be permitted to proceed anonymously in this matter as further revelation of his identify would result in significant harm to Defendant, the exact type which he seeks to remedy through his defense of this action. *See Doe v. Colgate Univ*., No. 5:15-CV-1069 (LEK/DEP), 2016 WL 1448829, at *3 (N.D.N.Y. Apr. 12, 2016) ("[s]hould Plaintiff prevail in

providing that the charges against him were unfounded and the procedures Defendants followed in their investigation were unfair, forcing Plaintiff to reveal his identity would further exacerbate the emotional and reputational injuries he alleges.").

The nature of the subject matter at hand, and the social and political climate surrounding accusations of sexual misconduct, strongly warrant protection of the parties by permitting them to remain anonymous. As other courts have noted, "it stands to reason that there are some persons who would seek to inflict physical or mental harm on Doe if they learned of his real name, especially in light of the ongoing national conversation about sexual misconduct on college campuses." *Alger*, 317 F.R.D. at 40 (granting motion to proceed by pseudonym to male student plaintiff found responsible for sexual assault in university Title IX proceeding, over defendants' objection that plaintiff "has not been targeted for violence to date [and] cannot name any individual friend or relative of Roe's who might potentially target him"); *see also Doe v. Virginia Polytechnic Inst. & State Univ.*, No. 18-CV-170, 2018 WL 5929647, at *3 (W.D. Va. Nov. 13, 2018) (granting motion to proceed by pseudonym to male student plaintiff found responsible for sexual assault in university Title IX proceeding, because identification "may put him at risk for physical or mental harm"); *Doe v. Trs. of Univ. of Pennsylvania*, No. 16-cv-05088-JP (E.D. Pa. Sept. 26, 2016) ECF No. 12 (granting motion for pseudonym, noting the plaintiff "has a legitimate fear of significant harm should the preliminary finding of his responsibility for a sexual assault be made public"); *EW v. New York Blood Ctr.*, 213 F.R.D. 108, 111 (E.D.N.Y. 2003) ("[M]any courts have held that, in lawsuits centering around sexual activity and behavior, a plaintiff is entitled to proceed under a pseudonym where revealing the plaintiff's name subjects him or her to the risk of public disapproval, harassment, or bodily harm."). Indeed, Defendant has already been fired from his job as a lawyer as a result of Plaintiff's allegations. Defendant appreciates that he cannot undo the

harm that has already been inflicted, but can prevent additional harm. Therefore, the harm that Defendant discusses herein is not merely theoretical but has already been realized by way of his termination.

Thus, factor two weighs heavily in favor of non-disclosure.

**C. Identification Presents Other, Severe Harms, Including that the Injury Litigated Against Would Be Incurred as a Result of the Disclosure of Defendant's Identity.**

The revelation of Defendant's identity would result in significant, irreparable harm to Defendant, the exact type which he seeks to avoid by way of his defense of this action. Specifically, if Defendant were to further reveal his identity, any ultimate success in this matter would be negated by disclosure of his name. Any public internet searches of his name would ultimately turn up results including this lawsuit and the horrifying false details of sexual assault. In that regard, even if Defendant were to be successful in getting a portion of his life back in this litigation, potential future employers would have access to these allegations at their fingertips—all it takes is a Google search. *See Doe v. Trustees of Bos. Univ.*, No. CV 24-10619-FDS, 2024 WL 4700161, at *6 (D. Mass. Nov. 6, 2024) ("If Doe's actual name were to be used in this case, a simple Internet search or background check would connect [plaintiff] with this dispute…immediately. But to connect [plaintiff]…without [plaintiff's] name being used, one would need to already suspect that [plaintiff] was involved, seek out the record of this lawsuit, and then look to the personal details disclosed and connect the dots.").

The likelihood of being hired, especially in the legal field, is almost nil when an applicant must contend with the social stigma associated with being accused of sexual assault, regardless of whether the allegations are ultimately resolved during litigation. Indeed, Defendant has *already* been fired from his position as a result of Plaintiff's allegations, and Defendant's once steady career has been derailed because his identity has been disclosed. The likelihood of another law

firm now hiring Defendant with the allegations present and public is slim to none. As one commentator has noted, employers "take a huge risk by hiring a former harasser. If I'm advising my client, I'm telling them not to make the hire unless they are convinced the allegations are false. And even in that case they are taking a risk." *See* Jon Hyman, Esq., Sexual Harassment is the Hiring Scarlet Letter, Workforce.com (Feb. 8, 2018), available at https://www.workforce.com/2018/02/08/sexual-harassment-hiring-scarlet-letter/ (recounting story of former professor who resigned amid accusations of sexual misconduct, left the country, found new work in China, and was then petitioned by students at new university based on prior, unproven allegations).

Surely this Court can take judicial notice of the prolific rise of the #MeToo movement, which has created a sea change in the nation's views on sexual misconduct, and, more importantly, on the social, professional, and personal implications of being publicly accused of sexual assault. Social media is now regularly weaponized against men accused of misconduct, with online petitions and protests calling for their termination, resignation, and repudiation, oftentimes before the allegations are even tested in any kind of reliable, unbiased proceeding.

According to the New York Times, since the rise of #MeToo, "at least 200 prominent men have lost their jobs after public allegations of sexual harassment." Carlsen et al., #MeToo Brought Down 200 Powerful Men. Nearly Half of Their Replacements are Women, N.Y. Times, (Oct. 29, 2018), https://www.nytimes.com/interactive/2018/10/23/us/metoo-replacements.html. Notably, the list of 200 only represents individuals "who permanently lost their jobs or significant roles, professional ties or projects (e.g., concert tours, book deals) within the past year after publicly reported accusations of sexual misconduct," and does not include "cases of those put on temporary or indefinite leave." And, in the vast majority of the listed cases, the repercussions came on the

basis of allegations alone, which the accused denied. *See also*, Brian Stelter and Tom Kludt, NBC Fires Matt Lauer After Complaint About 'Inappropriate Sexual Behavior', CNN (Nov. 29, 2017), https://money.cnn.com/2017/11/29/media/matt-lauer/index.html?iid=EL (Accused male fired without formal finding); CBS News Fires Charlie Rose After Sexual Misconduct Allegations, CBS News (Sept. 23, 2018), https://www.cbsnews.com/news/charlie-rose-fired-cbs-news-sexualmisconduct-allegations/ (Accused male fired without formal finding).

In other words, the harm that Defendant has faced due to being publicly identified in this matter cannot possibly be ameliorated by an eventual adjudication in his favor: Defendant has already lost his career and has had his life derailed in concrete, detrimental, life altering ways that go well beyond any sort of immaterial, low-level "embarrassment." *See Doe v. Alger*, 317 F.R.D. 37, 42 (W.D. Va. 2016) ("The court agrees with Doe that irreparable harm to his name is a relevant factor here and that it tips in favor of anonymity. If he were not allowed to proceed anonymously, part of the relief he seeks—expungement of his student record—would fall short of making him whole: the cat would have already been let out of the bag.").

The harm that Defendant fears has already occurred and if his name continues to be revealed in this case the harm will only be increased, concrete, severe, and lasting, and would ultimately render any subsequent victory on the merits hollow, as the very damage he seeks to avoid by this lawsuit would be incurred as a result of the disclosure. In the current social climate, a mere allegation of sexual assault alone is enough to ruin a person's life and career. Defendant should not be forced to risk his entire long professional future and personal reputation in order to have his case heard on the merits. His interest in privacy by far outweighs the public interest in open proceedings.

Thus, factor three weighs heavily in favor of non-disclosure.

**D. Plaintiff Will Not Be Prejudiced by Allowing Defendant to Defend This Case Anonymously.**

Permitting Defendant to appear in this matter as John Doe and precluding Plaintiff from further revealing Defendant's identity in court filings or otherwise will not "prejudice[e] the opposing party's ability to litigate the case." *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1069 (9th Cir. 2000). In the instant case, Plaintiff is well aware of Defendant's identity. As such, Plaintiff is perfectly able to prosecute this case, gather relevant evidence (the vast majority, if not all of which, is in Plaintiff's possession), conduct discovery, and formulate defenses just as she would if Defendant were to proceed under his own name. Thus, "[o]ther than the need to make redactions and take measures not to disclose plaintiff's identity, defendant[] will not be hampered or inconvenienced merely by Plaintiff's anonymity in court papers." *Doe No. 2 v. Kolko*, 242 F.R.D. 193, 198 (E.D.N.Y. 2006); *Doe v. Colgate University,* 1448829, at *3 ("The Court further finds that Defendants will not be prejudiced by allowing Plaintiff to proceed anonymously. . . Defendants are aware of Plaintiff's true identity and will have an uninhibited opportunity to litigate this matter regardless of whether Plaintiff's identity is disclosed publicly.").

Accordingly, Defendant should be permitted to proceed anonymously in this action as to continue revealing his name will cause additional significant prejudice to Defendant, while proceeding anonymously will not hinder Plaintiff in any way.

Thus, factor four weighs heavily in favor of non-disclosure.

**E. There is a Weak Public Interest in Knowing Defendant's Identity.**

Defendant should also be permitted to proceed in this action anonymously as the public does not have a strong interest in knowing his identity. Considering the purely legal nature of the claims presented, there is a weak public interest in learning Defendant's identity as an individual.

Although courts in the past strongly disfavored allowing parties to proceed anonymously except in extreme circumstances, the nature of the Internet today is such that any parties' identity is readily accessible via simple online search; thus, courts must be willing to afford additional protective measures to avoid further damage to a party involved in a matter concerning such egregious violations as the present one. *See Doe v. Boulder Valley Sch. Dist. No. RE-2*, 2011 WL 3820781, at *3 (Aug. 30, 2011) ("[A]lthough the media frequently exercise discretion in not publishing the names of sexual assault victims, electronic case filing allows anyone with an internet connection to access public pleadings, which means that revealing plaintiffs' names could expose them to contact be persons seeking to exploit their perceived vulnerability").

Here, if Defendant is required to have his name remain public on the docket, even if Defendant were to succeed in this litigation, the public's access to his identity would leave him vulnerable to further exploitations and would result in further damage to his future career endeavors, resulting in additional mental, emotional and psychological harm, the very harms which he seeks to remedy in this action.

Based on the foregoing, in consideration of the balancing of relevant factors, the Court should allow Defendant to employ a pseudonym in this matter. The interests of Plaintiff and/or the public will not be harmed at this early stage of the case if Defendant's name is not revealed.

**F. The Defendant Has Sought to Keep His Identity Confidential.**

"The extent to which the plaintiff's identity has been kept confidential may . . . affect the weight of the privacy interest," because the plaintiff's interest in anonymity throughout the litigation is stronger where she has sought to protect her anonymity prior to the litigation. *Doe v.*

*Del Rio*, 241 F.R.D. 154, 158 (S.D.N.Y. 2006). In the instant case, Defendant has done everything in his power to keep this matter confidential. The only people to whom Defendant has disclosed this matter include his immediate family and his legal counsel. *See* Przybylowski Decl. ¶ 9. Further, although Defendant has been publicly named by way of Plaintiff's Complaint, the fact that the press has not yet picked up this case weighs in favor of granting Defendant's anonymity. As the Eastern District of New York explained in a case where pseudonymity was granted to the defenadnt *after* he had already been named publicly in the original complaint:

> The seventh factor, whether the defendant's identity has thus far been kept confidential, also weighs in favor of his anonymity. Though the defendant's name appeared on the docket for approximately two weeks after the plaintiff filed her complaint, his name has not otherwise been associated with these allegations in the public media, as far as the court is aware. The plaintiff argues that the fact that the defendant's name appeared on the docket without the allegations becoming public suggests that it is unlikely that the press has taken an interest in the case. (See Pl. Opp. at 3.) However, it is not unlikely that the salacious nature of the allegations could result in the publication of the defendant's name, which would permanently link him to these allegations, whether or not proven.

*Doe v. Do*e, No. 20-CV-5329(KAM)(CLP), 2020 WL 6900002, at *3 (E.D.N.Y. Nov. 24, 2020).

Thus, Defendant has done everything in his power to maintain anonymity, and factor seven weighs in favor of non-disclosure.

**G. There Are Minimal Alternative Mechanisms for Protecting the Confidentiality of the Defendant.**

The final factor for this Court's consideration is whether there are alternative mechanisms for protecting Defendant's confidentiality. *See Sealed Plaintiff v. Sealed Defendant*, 537 F.3d at 190. In the instant case, the only alternative method would be to seal the entirety of this action; however, doing so would provide even less public access than Defendant's proposal of simply protecting the identity of Defendant[3]. Thus, this factor weighs in favor of non-disclosure.

[3] Defendant is simultaneously filing a motion to seal only the previously filed documents that contain Defendant's true name.

## CONCLUSION

For these reasons and such other reasons as may appear just to the Court, Defendant respectfully requests that his *Ex Parte* Motion to Proceed Under Pseudonym and for Protective Order be granted in its entirety.

**Dated: New York, New York**
**October 21, 2025**

**Respectfully submitted,**

**Nesenoff & Miltenberg, LLP**
***Attorneys for Defendant***

**By: */s/Andrew T. Miltenberg***
**Andrew T. Miltenberg, Esq.**
**363 Seventh Avenue, 5th Floor**
**New York, New York 10001**
**(212) 736-4500**
**amiltenberg@nmllplaw.com**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **ISABEL FINLEY,**<br><br>*Plaintiff,*<br><br>**v.**<br><br>**THOMAS PRZYBYLOWSKI,**<br><br>*Defendant.* | **Index No. 1:25-cv-04383-JAV** |

**Andrew Miltenberg**, an attorney duly admitted to practice before the United States District Court for the Southern District of New York, certifies pursuant to Local Civil Rule 7.1(c) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, that the total number of words in the Memorandum of Law in Support of Defendants' Motion to Seal and to Proceed Under A Pseudonym, exclusive of the cover page, captions, table of authorities, table of contents, and signature block, is 3,940 words, according to the "Word Count" function of Microsoft Word, the word-processing system used to prepare the document. Thus, the document complies with the word count limit of no more than 8,750 words set forth in Rule 7.1(c).

**Dated: New York, New York**
**October 21, 2025**

**NESENOFF & MILTENBERG, LLP**

By: /s/ Andrew T. Miltenberg
Andrew T. Miltenberg, Esq.

**CERTIFICATE OF SERVICE**

I hereby certify that I served the Notice of Motion to Proceed Under Pseudonym and For Protective Order, the Declaration of Thomas Przybylowski, and this Memorandum of Law upon plaintiff and filed same via ECF on October 21, 2025.

/s/ Andrew T. Miltenberg
Andrew T. Miltenberg