**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| ISABEL P. FINLEY,<br><br>                    Plaintiff,<br><br>        v.<br><br>THOMAS H. PRZYBYLOWSKI,<br><br>                        Defendant. | Index No. 1:25-cv-04383-JAV |

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HER MOTION TO DISMISS DEFENDANT'S COUNTERCLAIMS FOR TORTIOUS INTERFERENCE WITH CONTRACT AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Isabel P. Finley
*Pro Se*

27 Pine Ridge Road.
Underhill, VT 05489
ifinley@jd19.law.harvard.edu
(646) 402-5067

## <u>TABLE OF CONTENTS</u>

I. INTRODUCTION..................................................................................................................1

II. PROCEDURAL HISTORY ................................................................................................1

III. STATEMENT OF RELEVANT FACTS............................................................................3

IV. LEGAL STANDARDS.......................................................................................................5

    a. Motion to Dismiss...........................................................................................................5

        i. Tortious Interference with Contract ...........................................................................6

        ii. Intentional Infliction of Emotional Distress..............................................................7

        iii. Amount in Controversy Pursuant to 28 U.S.C. § 1332 ...........................................9

V. ARGUMENT......................................................................................................................10

    a. Mr. Przybylowski's counterclaim for tortious interference with contract has no basis in fact, fails to state a claim, and must therefore be dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(6)............................................................................................................................11

    b. Mr. Przybylowski's counterclaim for intentional infliction of emotional distress similarly has no basis in fact, fails to state a claim, and must therefore be dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(6). .............................................................................................14

    c. Mr. Przybylowski's counterclaims must be dismissed for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), due to his failure to adequately plead the amount in controversy required by 28 U.S.C. § 1332.. ..............................................................................19

VI. CONCLUSION .................................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)..........................................................................5, 6, 11

*A.V.E.L.A., Inc. v. Estate of Marilyn Monroe*, 131 F. Supp. 3d 196, 203 (S.D.N.Y. 2015) .................................................................................................................................................5

*Baez v. JetBlue Airways*, 745 F. Supp. 2d 214, 223 (E.D.N.Y. 2010) ...........................................8

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)........................................................6, 11, 17

*Cheikhaoui v. City of New York*, No. 22-CV-08855-CM (S.D.N.Y. Sep. 11, 2023) ..........9, 15, 18

*Evans v. Anderson*, No. 23-CV-8230-ST, (E.D.N.Y. Mar. 31, 2025).................................5, 16, 17

*Graham v. UMG Recordings, Inc.*, No. 25-CV-0399-JAV (S.D.N.Y. Oct. 9, 2025) ....................6

*Herlihy v. Hyatt Corp.*, 2022 U.S. Dist. LEXIS 48755, 2022 WL 826151, at *2 (S.D.N.Y. Mar. 18, 2022)...................................................................................................................................9

*Howell v. N.Y. Post Co.*, 81 N.Y.2d 115, 122 (1993)...................................................................7, 14

*In re Sears Holdings Corp.*, 628 B.R. 402, 410 (S.D.N.Y. 2021)....................................................7

*Izhar Ahmed v. Mulford*, No. 25-CV-132-AS, 2025 LX 197444, at *2-3 (S.D.N.Y. Jan. 10, 2025) ...........................................................................................................................................9, 20

*Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401–02 (2d Cir. 2006) ......................6, 7, 12, 13, 17

*Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d. 413, 424 (1996) ............................6, 12, 17

*LinkCo, Inc. v. Fujitsu Ltd.*, 230 F. Supp. 2d 492, 495 (S.D.N.Y. 2002).......................................6

*Medcalf v. Walsh*, 938 F.Supp. 2d 478, 488 (S.D.N.Y. 2013) .....................................5, 15, 17, 18

*Medtech Prods. v. Ranir, LLC*, 596 F. Supp. 2d 778, 796 (S.D.N.Y. 2008)........................6, 7, 12

*Miller v. Fluent Home, LLC*, No. 2:20-CV-00641, 2020 WL 5659051, at *2 (D. Utah Sept. 23, 2020)..............................................................................................................................................18

*Morrell v. St. Lawrence Univ.*, No. 23-CV-00426-BKS-DJS (N.D.N.Y. Mar. 14, 2024) ........8, 15

*Phx. Cos. v. Concentrix Ins. Admin. Sols. Corp.*, 554 F. Supp. 3d 568, 585 (S.D.N.Y. 2021).......5

*Richardson v. Pratcher*, 48 F.Supp. 3d 651, 673 (S.D.N.Y. 2014)................................................6

*Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 106 (2d Cir. 2021)............................................5, 6, 11, 12, 17

*Saint Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938) ......................9, 19

*Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir. 1999). ..................................................................7

*Truman v. Brown*, 434 F.Supp. 3d 100, 119 (S.D.N.Y. 2020) ...........................................8, 14, 15

*Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 158 (2d Cir. 2014) .........................................7, 14

**Statutes**

Victims of Gender-Motivated Violence Protection Law, New York City Administrative Code
§ 10-1101 et seq., formerly § 8-903 *et. seq.* ..............................................................................1

28 U.S.C. § 1332. ......................................................................................................................9, 19

**Rules**

Fed. R. Civ. P. 12(b) ...................................................................................................................5, 11

## I. **INTRODUCTION**

This case involves allegations of rape and sexual assault brought by the plaintiff against the defendant stemming from a violent sexual assault that Mr. Przybylowski perpetrated against her in May 2018. On December 5, 2025, Mr. Przybylowski filed his second proposed answer in this case ("Second Prop. Ans."), which differed significantly in content from his first proposed answer ("First Prop. Ans."), and furthermore added two counterclaims against the plaintiff. The facts provided by Mr. Przybylowski, even taken as true as the Court must for the purposes of this motion, are merely a counterfactual recounting of his version of the night at issue, and do not plausibly allege either of his counterclaims. Therefore, Plaintiff respectfully requests that this Court grant her motion to dismiss Defendant's counterclaims with prejudice and deny him any leave to further amend his answer.

## II. **PROCEDURAL HISTORY**

Plaintiff filed her Complaint *pro se* in this matter on May 23, 2025, bringing claims of Sexual Assault and Gender Motivated Violence pursuant to New York City Administrative Code § 10-1101 *et seq.*, formerly § 8-903 *et. seq.* Plaintiff's claims stem from a rape and sexual assault that Defendant Thomas Przybylowski perpetrated against her on the evening of May 26, 2018, and the early morning hours of May 27, 2018. ECF No. 1.

After Mr. Przybylowski failed to answer Plaintiff's Complaint by the October 10, 2025, deadline, Plaintiff filed a Motion for Entry of Clerk's Certificate of Default, ECF No. 11, and accompanying Declaration, ECF No. 12, pursuant to Fed. R. Civ. P. 55(a) and Local Civil Rule 55.1. The Clerk of Court entered the Clerk's Certificate of Default against Mr. Przybylowski the following day, on October 14, 2025. ECF No. 13. Subsequently, Mr. Przybylowski filed a

Motion to Vacate Default Judgment [sic], ECF No. 14, along with a supporting memorandum of law, ECF No. 14-1, and a number of attachments—including a proposed answer, ECF No. 14-7 ("First Prop. Ans."). In these filings, Mr. Przybylowski essentially stated that he missed the deadline to respond due to error on the part of his law firm, ECF No. 14-1 at 1, and asked that this Court grant his motion to vacate the default, *id.* at 5. In support of his motion to vacate, Mr. Przybylowski specifically argued that the "Plaintiff [w]ill in [n]o [w]ay [b]e [p]rejudiced by [v]acatur of the [d]efault [j]udgment [sic]," because "accompanying this motion is Defendant's Proposed Answer. Therefore, there has only been a four-day delay in Plaintiff receiving Defendant's Answer. Accordingly, that vacatur ought to be granted." *See* ECF No. 14-1 at 4.

Upon receiving Defendant's motion, Plaintiff filed a Notice of Non-Opposition to his Motion to Vacate Default Judgment on October 24, 2025, ECF No. 17. In that Notice of Non-Opposition, Plaintiff stated that she "consent[ed] to this Court vacating the entry of the Clerk's Certificate of Default, ECF No. 13, and to the docketing of Mr. Przybylowski's Proposed Answer filed as Exhibit E to ECF No. 14." *See* ECF No. 17 at 1.

On November 24, 2025, this Court granted Mr. Przybylowski's Motion to Vacate Default Judgment, quoted Plaintiff's above language regarding her consent to the docketing of Defendant's Proposed Answer, and directed Mr. Przybylowski to "file his proposed answer in this matter by December 5, 2025." ECF No. 23 at 1.

In the interim, the parties met and conferred pursuant to the Court's Notice of Initial Pretrial Conference, ECF No. 7, thereafter prepared their joint letter for the Court in advance of the initial pre-trial conference, and were able to come to an agreement regarding all proposed deadlines in the draft case management plan and scheduling order. At no time during any of

these phone and email communications did counsel for Defendant ever indicate that they were intending to bring counterclaims against the plaintiff.

The Court then held the initial pre-trial conference in this case on November 25, 2025, after which a Civil Case Management Plan and Scheduling Order was entered, ECF No. 24. The scheduling order required that any motion for leave to amend be filed by December 26, 2025, and set initial discovery deadlines for dates in December 2025. Following the initial pre-trial conference, this Court also referred the case to Magistrate Judge Gary Stein for a settlement conference. ECF No. 25.

On December 5, 2025, Mr. Przybylowski filed his second proposed answer in this case ("Second Prop. Ans."), which differed significantly in content from his First Proposed Answer, and furthermore added two counterclaims against the plaintiff. ECF No. 27.

On December 15, 2025, this Court entered an Opinion and Order denying Mr. Przybylowski's Motion for Protective Order and to Proceed Under Pseudonym, ECF No. 15, as well as his Motion to Seal Court Record, ECF No. 16. *See* ECF No. 28.

## III.  STATEMENT OF RELEVANT FACTS

Regarding the details of Ms. Finley's allegations, Mr. Przybylowski's Second Proposed Answer stated only that Ms. Finley "has only brought allegations of assault against Przybylowski in an attempt to bolster her advocacy credibility." ECF No. 27 at ¶ 145. He also stated that "[o]n information and belief, however, Finley has spread the false allegations to numerous third parties leading up to the filing of her Complaint, stating that Przybylowski raped her." *Id.* at ¶ 147.

In his first counterclaim, for Tortious Interference with Contract, Mr. Przybylowski alleged that Ms. Finley "intentionally interfered with Przybylowski's contract with his employer, Pomerantz LLP." *Id.* at ¶ 153. To support this allegation, Mr. Przybylowski alleged that "[a]t the

time Finley filed her Complaint, Przybylowski was employed by Pomerantz LLP **and as such**, his employment was established by contract." *Id.* at ¶ 154 (emphasis added). He further alleged that Ms. Finley "made false and misleading statements in her Complaint and to third parties with the intention of causing harm to Przybylowski," *id.* at ¶ 155, that she "made the statements contained in the Complaint with the intent of derailing Przybylowski's career and having him fired," *id.* at ¶ 156, and that she "knew that Pomerantz LLP would see the public complaint that she filed against Przybylowski containing the False Statements," *id.* at ¶ 157. He further alleged that "[t]he actions of Finley harmed [him]," and that "upon learning of Finley's Complaint, Pomerantz LLP fired [him],"*id.* at ¶ 158, and that "[b]ased on the foregoing, Finley intentionally interfered with Pryzybylowski's contractual relations in violation of New York law," *id.* at ¶ 159.

In his second counterclaim, for Intentional Infliction of Emotional Distress, Mr. Przybylowski alleged that "[b]y making the defamatory statements described above and embarking on a smear campaign against [him], Finley engaged in extreme and outrageous conduct." *Id.* at ¶ 164. To support this second allegation, Mr. Przybylowski alleged that Ms. Finley "engaged in extreme and outrageous conduct that exceeded all possible bounds of decency," when she "[fil[ed] a public Complaint full of lies against him." *Id.* at ¶ 165. He further alleged that Ms. Finley "engaged in the extreme and outrageous conduct with the intent to cause Przybylowski severe emotional distress," *id.* at ¶ 166, and that she "disregarded the substantial probability that her threats and lies would cause Przybylowski severe emotional distress," *id.* at ¶ 167. Mr. Przybylowski then concluded that Ms. Finley's alleged "defamatory statements and threats" directly and proximately caused "the severe emotional distress that [he] is experiencing," *id.* at ¶ 168, which he described as "emotional pain and suffering, humiliation,

embarrassment, anxiety, loss of enjoyment of life, extreme emotional trauma, loss of appetite, insomnia, depression, and panic attacks," *id.* at ¶ 168.

Regarding both counterclaims, Mr. Przybylowski alleged "compensatory and punitive damages" but described them only "in an amount to be determined at trial." *Id.* at ¶¶ 162, 170.

## IV.  LEGAL STANDARDS

### a.  Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) provides that a party may move to dismiss any claim that "fail[s] to state a claim upon which relief can be granted," Fed. R. Civ. P. 12(b)(6), and the Court "evaluates a motion to dismiss a counterclaim using the same standard as a motion to dismiss a complaint," *Evans v. Anderson*, No. 23-CV-8230-ST, (E.D.N.Y. Mar. 31, 2025) ECF No. 54 at 3–4 (quoting *Phx. Cos. v. Concentrix Ins. Admin. Sols. Corp.*, 554 F. Supp. 3d 568, 585 (S.D.N.Y. 2021); *A.V.E.L.A., Inc. v. Estate of Marilyn Monroe*, 131 F. Supp. 3d 196, 203 (S.D.N.Y. 2015)). The court's evaluation of a claim against a 12(b)(6) motion to dismiss is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

In order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 106 (2d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The plausibility requirement is met only when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and "it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). While the court must "accept[] all factual allegations [in the complaint] as true and draw[] all reasonable inferences in the

plaintiffs' favor," it must also "disregard conclusory allegations, such as 'formulaic recitation[s] of the elements of a cause of action'" *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 106–07 (2d Cir. 2021) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"A plaintiff may not simply allege facts that are consistent with liability; the complaint must 'nudge plaintiff's claims across the line from conceivable to plausible,'" *Graham v. UMG Recordings, Inc.*, No. 25-CV-0399-JAV (S.D.N.Y. Oct. 9, 2025) ECF No. 96 at 2 (quoting *Twombly*, 550 U.S. at 570), and "'[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice,'" *Graham*, ECF No. 96 at 2 (quoting *Iqbal*, 556 U.S. at 678).

### i. <u>Tortious Interference with Contract</u>

To state a claim for tortious interference with contract under New York law, a claimant must plausibly plead the following elements:

> (1) the existence of a valid contract between the [counter] plaintiff and a third party; (2) the [counter]defendant's knowledge of the contract; (3) the [counter]defendant's intentional procurement of the third-party's breach of the contract without justification; (4) actual breach of the contract; and (5) damages resulting therefrom.

*Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401–02 (2d Cir. 2006) (quoting *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d. 413, 424 (1996) (internal quotation marks omitted). Regarding the knowledge requirement, "[a]lthough a defendant need not be aware of all the details of a contract, it must have actual knowledge of the specific contract." *Medtech Prods. v. Ranir, LLC*, 596 F. Supp. 2d 778, 796 (S.D.N.Y. 2008) (quoting *LinkCo, Inc. v. Fujitsu Ltd.*, 230 F. Supp. 2d 492, 495 (S.D.N.Y. 2002)); *see also Richardson v. Pratcher*, 48 F.Supp. 3d 651, 673 (S.D.N.Y. 2014).

With regard to the third element, a claimant "need not allege malice on the part of [counterdefendant] or that [counterdefendant] used wrongful means to procure the breach. [Claimant] need only allege facts that show that [counterdefendant's] procurement of the breach was without justification." *Medtech*, 596 F. Supp. at 798. Of course, in order to adequately plead unjustified procurement of breach, the claimant must also plead specific facts alleging an *actual* breach of contract occurred, and that the [counter]defendant not only caused that breach, but did so unjustifiably. *See Kirch*, 449 F.3d at 402 (2d Cir. 2006).

### ii.  Intentional Infliction of Emotional Distress

Pursuant to New York law, a successful claim for intentional infliction of emotional distress (IIED)

> requires a showing of (1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress…. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go **beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society**.

*Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir. 1999) (internal quotations and citations omitted) (emphasis added).

The standard for an IIED claim is "strict," "rigorous, and difficult to satisfy." *Howell v. N.Y. Post Co.*, 81 N.Y.2d 115, 122 (1993) (internal citations omitted). IIED "remains a highly disfavored [tort] under New York law, [and] is to be invoked only as a last resort." *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 158 (2d Cir. 2014) (collecting cases). As a general matter, "New York courts have been extremely reluctant to find extreme and outrageous conduct," *In re Sears Holdings Corp.*, 628 B.R. 402, 410 (S.D.N.Y. 2021), and the Second Circuit has noted New York case law's recognition of "the poorly defined elements of and limitations on the tort," as well as "the perils of a generous rendering of IIED," *Turley*, 774 F.3d at 159.

7

"Only the most egregious conduct has been found sufficiently extreme and outrageous to establish this tort." *Medcalf v. Walsh*, 938 F.Supp. 2d 478, 488 (S.D.N.Y. 2013) (collecting and discussing cases where various examples of highly reprehensible and/or abusive behavior nevertheless failed to give rise to an IIED claim). Even "false accusations of criminal conduct, or conduct that society deems reprehensible, do not inherently establish IIED," including when the conduct alleged is rape, sexual assault, or sexual harassment. *Truman v. Brown*, 434 F.Supp. 3d 100, 119 (S.D.N.Y. 2020).[1] Moreover, even where allegedly false accusations were reported to authorities, there can be no claim for IIED "absent additional outrageous behavior," which the Second Circuit "has suggested… could be some combination of alleged public humiliation… verbal abuse or harassment, physical threats, permanent loss of employment, or conduct contrary to public policy." *Truman*, 434 F.Supp. at 119–20 (internal quotations and citations omitted).

Ultimately, "[w]hether the alleged conduct is sufficiently outrageous enough to satisfy [this element] is a matter of law for a court to decide." *Morrell v. St. Lawrence Univ.*, No. 23-CV-00426-BKS-DJS (N.D.N.Y. Mar. 14, 2024), ECF No. 43 at 56 (quoting *Baez v. JetBlue Airways*, 745 F. Supp. 2d 214, 223 (E.D.N.Y. 2010)).

Allegations regarding intent or reckless disregard and causality must be plead with particularity and in a "non-conclusory" fashion, *Medcalf*, 938 F.Supp. at 489, though these requirements for the claim have been subject to considerably less judicial attention than those regarding outrageousness and severity of distress. With regard to the final requirement, "the emotional distress suffered by the [counter]plaintiff must be so severe that no reasonable

---

[1] The *Truman* court also provided the following relevant stringcite: "*See, e.g.*, *Nungesser v. Columbia Univ.*, 169 F. Supp. 3d 353, 374-75 (S.D.N.Y. 2016) (dismissing IIED claim against university for its treatment of plaintiff accused of rape, explaining that "even a false charge of sexual harassment does not rise to the level of outrage required" (citation omitted)); *Wolff v. City of N.Y. Fin. Servs. Agency*, 939 F. Supp. 258, 264 (S.D.N.Y. 1996) (dismissing IIED claim where defendant falsely accused plaintiff of sexual harassment)." *Truman*, 434 F.Supp at 119.

[person] could be expected to endure it." *Id.* "Any allegations of suffering from severe emotional distress must be supported with objective evidence and not speculative claims," and "conclusory statement[s] collecting symptoms [are] not adequate to allege severe emotional distress." *Cheikhaoui v. City of New York*, No. 22-CV-08855-CM (S.D.N.Y. Sep. 11, 2023), ECF No. 60 at 21–22.

### iii.  **Amount in Controversy Pursuant to 28 U.S.C. § 1332**

In order to properly plead diversity jurisdiction pursuant to 28 U.S.C. § 1332, which allows litigants to bring state law claims in federal court, a litigant must plead that there exists diversity of citizenship between the parties and that the amount in controversy exceeds $75,000.00. 28 U.S.C. § 1332. In 1937, the U.S. Supreme Court established the "legal certainty" test, holding that "the sum claimed by the [counter]plaintiff controls if the claim is apparently made in good faith" and that "[i]t must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." *Saint Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938). Thus, while a [counter]plaintiff does not need to prove their damages at the pleading stage, they are required to plead *to a legal certainty* the amount of damages they are claiming.

A court in this District discussed the amount in controversy requirement more recently in *Izhar Ahmed v. Mulford*, No. 25-CV-132-AS, 2025 LX 197444, at *2-3 (S.D.N.Y. Jan. 10, 2025), finding that defendants seeking removal to federal court under diversity jurisdiction failed to adequately plead an amount in controversy exceeding $75,000.00 because

> the complaint does not state a specific monetary demand, and **broadly alleging serious personal injury and economic loss doesn't satisfy the pleading requirement**. *See Herlihy v. Hyatt Corp.*, 2022 U.S. Dist. LEXIS 48755, 2022 WL 826151, at *2 (S.D.N.Y. Mar. 18, 2022) ("[G]eneralized and conclusory allegations do not permit the Court to draw the reasonable inference that the amount in controversy requirement is met.")....

This is simply not enough to show that the amount in controversy is more than $75,000, so removal is improper.

*Id.* (emphasis added).

## V.  **ARGUMENT**

In Mr. Przybylowski's original motion to vacate, which he filed on October 14, 2025, he attached his First Proposed Answer and asked this Court for permission to docket that answer and vacate the entry of default that had already been entered against him. The Court granted that request, and directed Mr. Przybylowski to "file his proposed answer in this matter by December 5, 2025," ECF No. 23. By Mr. Przybylowski's own admission, he had already been terminated from his employment on October 13, 2025. *See* ECF No. 15-1 at 9. Accordingly, absolutely no new facts have developed or come to light between the filing of his First Proposed Answer and the filing of his Second Proposed Answer—leaving no reasonable explanation for the changes in how Mr. Przybylowski characterizes his version of what happened on the night in question (which have changed, sometimes significantly, between his many filings to date), nor for the addition of legally baseless counterclaims that were filed solely to harass the plaintiff and increase the time she must spend on her case.

None of the 'facts' alleged in Defendant's counterclaims pertain remotely to the actual elements of his two counterclaims—rather, both claims rest solely on the fact that Plaintiff filed her complaint with this Court. Instead of pleading facts sufficient to support his counterclaims, Mr. Przybylowski sought to fill the facts section of his counterclaims filing with an alternative narrative, ostensibly one to which he could direct potential employers or others who are understandably concerned about the allegations against him. That these alleged "facts" have absolutely nothing to do with the counterclaims they are ostensibly supposed to support only further evinces Defendant's bad faith.

Defendant's counterclaims epitomize the kind of conclusory, insufficient pleading that contains little more than a recitation of the elements, necessitating dismissal of both counterclaims under Fed. R. Civ. P. 12(b)(6). Moreover, Mr. Przybylowski failed entirely to plead any facts as required to meet the amount in controversy requirement necessary for this Court to hear this case pursuant to 28 U.S.C. § 1332, further requiring dismissal of his counterclaims under Fed. R. Civ. P. 12(b)(1).

   a.  **Mr. Przybylowski's counterclaim for tortious interference with contract has no basis in fact, fails to state a claim, and must therefore be dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).**

To support his claim that Ms. Finley intentionally engaged in tortious interference with his contract with Pomerantz LLP, Mr. Przybylowski's counterclaim was required to contain sufficient factual matter, accepted as true, to "'state a claim to relief that is plausible on its face.'" *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 106 (2d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). For his claim to be plausible, he was required to "plead[] factual content that allows the court to draw the reasonable inference that [Ms. Finley] is liable for the misconduct alleged," and "more than a sheer possibility that [she] has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). Though for the purposes of this motion, the Court must accept Mr. Przybylowski's "factual allegations [in his answer] as true and draw[] all reasonable inferences in the [his] favor," it must also "disregard conclusory allegations, such as 'formulaic recitation[s] of the elements of a cause of action'" *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 106–07 (2d Cir. 2021) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). As such, because Mr. Przybylowski failed to plead *any* of the elements for tortious interference with contract, the Court should dismiss his counterclaim with prejudice.

11

Firstly, Mr. Przybylowski's counterclaim makes no mention of his actual contract with his former employer, Pomerantz LLP, and therefore fails to plead that it was a valid contract as required by the elements, *see, e.g.*, *Kirch*, 449 F.3d at 401–02; *Lama Holding Co.*, 88 N.Y.2d. at 424. Here, Mr. Przybylowski was required to show "the existence of a valid contract" between he and Pomerantz LLP. *See id.* Instead, he provided only a cursory and conclusory sentence that he "was employed by Pomerantz LLP **and as such**, his employment was established by contract," Second Prop. Ans. at ¶ 154, which does not meet the plausibility requirements under *Sacerdote*. 9 F.4th at 106–07.

Secondly, Mr. Przybylowski similarly failed to plead any facts indicating Ms. Finley had any knowledge whatsoever of his employment contract, much less the "actual knowledge of the specific contract" as is required by law to state a claim for tortious interference. *See Medtech*, 596 F. Supp. 2d at 796. Even if Ms. Finley had been aware of the fact that Mr. Przybylowski's employment *may* have been via contract, she could not have had any "actual knowledge of the specific contract," *see id*. Therefore, she would have—and has—no actual knowledge as to what Mr. Przybylowski's contract with Pomerantz LLP might have looked like, whether it was valid, whether it contained any type of morality clause or any provision requiring that employees not show up on dockets as defendants themselves, or any other requirements. General knowledge about industry practices and resultant assumptions about possible contracts is wholly insufficient to plead this claim—rather, Plaintiff must have had actual knowledge of at least some specific provisions, limitations, and/or obligations contemplated by the relevant contract. Regardless, not only does Ms. Finley not have any way of knowing any of this information, but as is relevant here, Mr. Przybylowski absolutely failed to plead that she did.

Furthermore, without any actual knowledge of Mr. Przybylowski's alleged contract, Ms. Finley did not, and indeed could not, have intentionally procured a breach of that contract. In addition, because Mr. Przybylowski only alleged that "upon learning of Finley's Complaint, Pomerantz LLP fired [him]," Second Prop. Ans. at ¶ 158, he has failed to plausibly allege that there was even a breach of his alleged contract, let alone that Ms. Finley caused that breach intentionally. Regarding her intention, Mr. Przybylowski, once again, only provided a brief, wholly conclusory statement that Ms. Finley "made the statements contained in the Complaint with the intent of derailing Przybylowski's career and having him fired." *Id.* at ¶ 156. Beyond the fact that Mr. Przybylowski's statement does not meet *Iqbal's* plausibility standards, it defies logic that Ms. Finley would intentionally interfere with Mr. Przybylowski's employment while seeking to recover damages in this action. Finally, in order to adequately plead *unjustified* procurement of breach, claimants must also plead specific facts alleging that the [counter]defendant not only caused that breach, but did so unjustifiably. *See Kirch*, 449 F.3d at 402 (2d Cir. 2006). Ms. Finley's action to seek relief for the harm Mr. Przybylowski caused to her is not, in any way, unjustifiable. In any event, he failed to plead facts to support such an allegation.

To prove a breach of his contract, Mr. Przybylowski would have had to identify the actual breach. As explained above, he merely explained that "upon learning of Finley's Complaint, Pomerantz LLP fired [him]"; he did not plausibly allege that Pomerantz LLP did so because of a breach in his contract. Second Prop. Ans. at ¶ 158. He provided no facts about the contract itself, which clause Ms. Finley allegedly caused him or Pomerantz LLP to breach, or how Pomerantz LLP explained that such a breach was the reason they fired him.

While Mr. Przybylowski plausibly alleges that he was harmed by Ms. Finley's actions, he has not plausibly alleged an amount of these damages and has stated only that they were "an amount to be determined at trial." *Id.* at ¶¶162, 170.

As Mr. Przybylowski has failed to plead any of the required elements for tortious interference with contract under New York law, his counterclaim must be dismissed with prejudice.

**b. Mr. Przybylowski's counterclaim for intentional infliction of emotional distress similarly has no basis in fact, fails to state a claim, and must therefore be dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(6)..**

Courts have consistently upheld that the standard for an Intentional Infliction of Emotional Distress ("IIED") claim is "strict," "rigorous, and difficult to satisfy," *Howell v. N.Y. Post Co.*, 81 N.Y.2d 115, 122 (1993) (internal citations omitted), and that IIED "remains a highly disfavored [tort] under New York law, [and] is to be invoked only as a last resort." *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 158 (2d Cir. 2014) (collecting cases). Even "false accusations of criminal conduct, or conduct that society deems reprehensible, do not inherently establish IIED," including when the conduct alleged is rape, sexual assault, or sexual harassment. *Truman v. Brown*, 434 F. Supp. 3d 100, 119 (S.D.N.Y. 2020) (relying on *"e.g.*, *Nungesser v. Columbia Univ.*, 169 F. Supp. 3d 353, 374-75 (S.D.N.Y. 2016) (dismissing IIED claim against university for its treatment of plaintiff accused of rape, explaining that "even a false charge of sexual harassment does not rise to the level of outrage required" (citation omitted)); *Wolff v. City of N.Y. Fin. Servs. Agency*, 939 F. Supp. 258, 264 (S.D.N.Y. 1996) (dismissing IIED claim where defendant falsely accused plaintiff of sexual harassment)).

Moreover, the Second Circuit has explained that even where allegedly false accusations were reported to authorities, "absent **additional** outrageous behavior," there can be no claim for

IIED. *Truman*, 434 F. Supp. at 119–20 (internal quotations and citations omitted) (emphasis added). Regarding that additional outrageous behavior, the *Truman* court described that it "could be some combination of alleged public humiliation… verbal abuse or harassment, physical threats, permanent loss of employment, or conduct contrary to public policy." *Id.*

Allegations regarding intent or reckless disregard and causality must be plead with particularity and in a "non-conclusory" fashion, *Medcalf*, 938 F.Supp. at 489, though these requirements for the claim have been subject to considerably less judicial attention than those regarding outrageousness and severity of distress. With regard to the final requirement, "the emotional distress suffered by the [counter]plaintiff must be so severe that no reasonable [person] could be expected to endure it." *Id.* "Any allegations of suffering from severe emotional distress must be supported with objective evidence and not speculative claims," and "conclusory statement[s] collecting symptoms [are] not adequate to allege severe emotional distress." *Cheikhaoui v. City of New York*, No. 22-CV-08855-CM (S.D.N.Y. Sep. 11, 2023), ECF No. 60 at 21–22.

In *Morrell v. St. Lawrence Univ.,* the court upheld a claim for IIED at the motion to dismiss stage only after finding that, after accepting the statements made in a counterclaim as true, the counterdefendant "engaged in a campaign of making false accusations against him to his employer, police, the daughters of a friend, and other professors." *Id.* No. 23-cv-00426-BKS-DJS (N.D.N.Y. Mar. 14, 2024), ECF No. 43 at 57. This case is distinguishable from the instant matter as Mr. Przybylowski has not alleged anything of the sort. As explained above, the only factual assertions he made regarding Ms. Finley's conduct at all were that "on information and belief . . . [she] has spread the false allegations to numerous third parties leading up to the filing of her Complaint, stating that Przybylowski raped her," Second Prop. Ans. at ¶ 147, and an

unsupported assertion of an alleged "smear campaign," *id.* at ¶ 164. Mr. Przybylowski did not

plead any specific facts regarding that alleged "smear campaign," or identify any of the alleged

third parties he opines that Ms. Finley has contacted. He does, however, plead that Ms. Finley

has had no contact whatsoever with him since the assault, aside from a brief period of proximity

to each other while arriving at a law firm event that they and their mutual friend (upon whom

Ms. Finley was dependent for her summer housing) had already been scheduled to attend. *Id.* at

¶¶ 141-44.

      Furthermore, Mr. Przybylowski did not plead any facts to allege that Ms. Finley

contacted any of his family members, friends, employers, or anyone else in his life, nor did he

plead any facts that she has ever made any threats or statements that could possibly be construed

as such. Simply stated, the only specific facts Mr. Przybylowski plead regarding Ms. Finley's

behavior in this action are that she has followed the lawful avenues for redress that are made

expressly available to rape victims—that is, to seek medical care when she could, to report the

assault to the District Attorney's office, and now, ultimately, to pursue civil remedies.

      In *Evans*, the court found that the counterclaimant had "sufficiently, *albeit narrowly*,

alleged Plaintiff's conduct to be extreme and outrageous" *Evans v. Anderson*, No. 23-CV-8230-

ST, (E.D.N.Y. Mar. 31, 2025) ECF No. 54 at 6 (emphasis added). Yet critically, that finding was

based on the fact that the counterdefendant had repeatedly emailed the counterclaimant calling

him a "child molester," wrote that he would be "arrested, tried, and convicted… never be

allowed to work with children, single women, nor families again," and threatened to go to the

police and Child Protective Services if he did not pay her and move. *Id.* Furthermore, she also

proactively contacted the counterclaimant's family, friends, and employers to inform them of

what the counterclaimant asserted were "falsely made" allegations that he had sexually abused a

child. *Id.* Moreover, it is worth emphasizing that even with all the additional conduct undertaken by the counterdefendant in *Evans*, the judge there *still* found that the counterclaimant had only "narrowly" succeeded in plausibly pleading extreme and outrageous conduct. *Evans*, ECF No. 54 at 6.

Just as he did with his counterclaim for tortious interference with contract, Mr. Przybylowski supported his claim for IIED only with the type of unsupported, conclusory statements that run afoul of the requirement that "[a]llegations regarding intent or reckless disregard and causality must be plead with particularity and in a 'non-conclusory' fashion." *Medcalf*, 938 F.Supp. at 489. Ms. Finley's alleged "extreme and outrageous conduct" was filing her complaint in this matter and "making the defamatory statements" within it, and "embarking on a smear campaign against [him]," though he provided absolutely no facts at all alleging such a campaign. Second Prop. Ans. at ¶ 164. Regarding "her intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress," *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401–02 (2d Cir. 2006) (quoting *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d. 413, 424 (1996) (internal quotation marks omitted), Mr. Przybylowski claimed only that Ms. Finley "engaged in the extreme and outrageous conduct with the intent to cause Przybylowski severe emotional distress," when she "fil[ed] a public Complaint full of lies against him," *id.* at ¶ 165. These statements are no more than the type of "conclusory allegations, such as 'formulaic recitation[s] of the elements of a cause of action'" which courts "must disregard" *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 106–07 (2d Cir. 2021) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Mr. Przybylowski also failed to plead with any particularity facts that show any connection between Ms. Finley's conduct and the injury he allegedly experienced.

Finally, regarding his alleged "severe emotional distress," Mr. Przybylowski listed only that he experienced which he described as "emotional pain and suffering, humiliation, embarrassment, anxiety, loss of enjoyment of life, extreme emotional trauma, loss of appetite, insomnia, depression, and panic attacks," Second Prop. Ans. at ¶ 168, which is exactly the type of "'conclusory statement[s] collecting symptoms'" that "[are] not adequate to allege severe emotional distress." *Cheikhaoui v. City of New York*, No. 22-CV-08855-CM (S.D.N.Y. Sep. 11, 2023), ECF No. 60 at 21–22. Claimants must offer facts "indicating what emotional distress [they] suffered, how long it lasted, how severe it was, and whether [they] sought medical treatment for the distress." *Id.* (internal quotation and citation omitted). Mr. Przybylowski provided none of these facts. As such, he has failed in his requirement to show that "the emotional distress suffered by the [counter]plaintiff must be so severe that no reasonable [person] could be expected to endure it." *Medcalf*, 938 F.Supp. at 489.

Finally, to find a plausibly plead IIED claim solely on the basis that a rape victim filed a civil complaint and the defendant faced some repercussions as a result of the filing would not only have a massive chilling effect on victims' (already difficult) path to file such claims, but it would also effectively destroy the rights to any causes of action where the conduct alleged could cause reputational harm. It is not much of a stretch to find that most lawsuits would therefore be implicated. As this Court recently discussed, "[i]n nearly *all* civil and criminal litigation filed in the United States Courts, one party asserts that the allegations leveled against it by another party are patently false, and the result of the litigation may quickly prove that." ECF No. 28 at 9 (quoting *Miller v. Fluent Home, LLC*, No. 2:20-CV-00641, 2020 WL 5659051, at *2 (D. Utah Sept. 23, 2020) (emphasis added)). Just as allowing this reality to affect litigants' requests for anonymity in sexual assault cases would *ipso facto* anonymize every such case, a policy wherein

defendants in sexual assault cases could use only conclusory statements to file IIED counterclaims after the initiation of every lawsuit would produce results where that action would become the status quo, which would inevitably lead to a profound chilling effect on any plaintiff wishing to exercise their constitutional rights to the justice system.

**c.  Mr. Przybylowski's counterclaims must be dismissed for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), due to his failure to adequately plead the amount in controversy required by 28 U.S.C. § 1332.**

In addition to his failures to state a claim for both counterclaims alleged, Mr. Przybylowski's counterclaims must also be dismissed for lack of subject matter jurisdiction, as he failed to plead *any* facts with regard to the amount in controversy. In his initial section titled "Jurisdiction and Venue," Mr. Przybylowski summarily states that "[t]his Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000." ECF No. 27 at ¶ 111. However, the *only* subsequent mentions of any of Mr. Przybylowski's supposed damages are the last allegation for both his counterclaims, which both read as follows, "[a]s a result, Przybylowski claims compensatory and punitive damages herein **in an amount to be determined at trial,**" ECF No. 27 at ¶¶ 162, 170 (emphasis added), and similarly general language simply summarizing categories of damages "in an amount to be determined at trial" in his prayer for relief, ECF No. 27 at 16.

This broad, general, and utterly non-specific treatment of amount in controversy plainly fails to meet the pleading requirements that would grant this Court subject matter jurisdiction under 28 U.S.C. § 1332. Not only does Mr. Przybylowski fail to plead the amount in controversy "to a legal certainty" per the standard established by *Saint Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938), but he also fails to plead any specific facts regarding his

damages or the amount in controversy *at all*. Just as another court in this District held in *Izhar Ahmed v. Mulford*, No. 25-CV-132-AS, 2025 LX 197444, at *2-3 (S.D.N.Y. Jan. 10, 2025), "broadly alleging serious personal injury and economic loss doesn't satisfy the pleading requirement," and "generalized and conclusory allegations do not permit the Court to draw the reasonable inference that the amount in controversy requirement is met," *id.* (internal citation omitted)—and that is precisely the case here with Mr. Przybylowski's pleading. Accordingly, his counterclaims must be dismissed due to his failure to adequately plead an amount in controversy exceeding $75,000.00, and this Court's resultant lack of subject matter jurisdiction.

## VI.    CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that this Court grant Plaintiff's Motion to Dismiss, dismiss all of Mr. Przybylowski's counterclaims with prejudice, and deny him any leave to amend.

By: _____
    Isabel P. Finley
    27 Pine Ridge Road.
    Underhill, VT 05489

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document and attachments were filed via email to the Pro Se Intake Unit on December 29, 2025, pursuant to the *Full Instructions for Filing a New Case Pro Se* (available at: https://www.nysd.uscourts.gov/prose) and the *Service Guide in Pro Se Cases Where Fees Have Been Paid* (available at: https://www.nysd.uscourts.gov/forms/service-guide-pro-se-cases-where-fees-have-been-paid), thereby effectuating service upon Defendant's attorneys via ECF.

Dated: December 29, 2025

By: _____

Isabel P. Finley
27 Pine Ridge Road.
Underhill, VT 05489
ifinley@jd19.law.harvard.edu
(646) 402-5067


**CERTIFICATE OF WORD COUNT IN COMPLIANCE WITH LOCAL RULE 7.1(c)**

I hereby certify that pursuant to Local Rule 7.1(c), the total number of words in the above Memorandum of Law in Support of Plaintiff's Motion to Dismiss Defendant's Counterclaims for Tortious Interference with Contract and Intentional Infliction of Emotional Distress is 6,221 , exclusive of the caption, table of contents/authorities, signature blocks, and required certificates, and inclusive of any footnotes and endnotes.

Dated: December 29, 2025

By: _____

Isabel P. Finley
27 Pine Ridge Road.
Underhill, VT 05489
ifinley@jd19.law.harvard.edu
(646) 402-5067