UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------------- X
                            :

ISABEL P. FINLEY,                    :

                            :

                Plaintiff,      :

                            :        25-CV-04383 (JAV)

      -v-                  :

                            :      <u>OPINION AND ORDER</u>

THOMAS H. PRZYBYLOWSKI,     :

                            :

                Defendant.    :

                            :

--------------------------------------------------------------------- X

JEANNETTE A. VARGAS, United States District Judge:

      Plaintiff and Counterclaim-Defendant Isabel Finley ("Finley"), proceeding *pro se*, moves to dismiss counterclaims brought by Defendant and Counterclaim-Plaintiff Thomas Przybylowski ("Przybylowski") for tortious interference with contract and intentional infliction of emotional distress.  ECF No. 29 ("Motion" or "Mot.").  For the following reasons, the Motion is **GRANTED**.

## BACKGROUND

      Finley and Przybylowski are attorneys who met seven years ago when Przybylowski was a summer associate at Schulte Roth & Zabel.  ECF No. 1 ("Complaint" or "Compl."), ¶¶ 7-11; ECF No. 27 ("Answer" or "Ans."), ¶¶ 114-15. Finley alleges that Przybylowski violently raped and sexually assaulted her on the night they met, causing her physical, professional, and psychological damage. Compl., ¶¶ 24-44, 54-56.  Defendant denies all allegations of nonconsensual conduct.  Ans., ¶¶ 24-44, 78-97.  He alleges in his Counterclaim that they had a consensual sexual encounter.  *Id.*, ¶¶ 121-31.  Przybylowski alleges that he told a

mutual friend the following day that he was not looking for a serious relationship, and that, as a result of this rejection, Finley set out on a smear campaign against Przybylowski. *Id.*, ¶¶ 136-37. Przybylowski further alleges that Finley was aware that Przybylowski "was a successful lawyer," and that she brought this suit to obtain "a payoff" from him. *Id.*, ¶ 148.

According to the Counterclaim, at the time Finley filed her Complaint, "Przybylowski was employed by Pomerantz LLP and as such, his employment was established by contract." *Id.*, ¶ 154. Przybylowski alleges, on information and belief, that Finley knew that Pomerantz LLP would see the public complaint that she filed against Przybylowski, and that she made the statements contained in the Complaint with the intent of derailing Przybylowski's career and having him fired. *Id.*, ¶¶ 156-57.

Finley brings her civil damages suit under the New York City Gender-Motivated Violence Act ("GMVA"), New York City Administrative Code § 10-1101 *et seq.*, and New York Penal Law § 130.00 *et seq.* Compl., ¶¶ 1, 79-97.

Przybylowski has asserted two counterclaims against Finley: (1) tortious interference with contract under New York law and (2) intentional infliction of emotional distress under New York Law. Ans., ¶¶ 151-70.

## LEGAL STANDARDS

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court accepts as true all well-pleaded allegations and draws all reasonable inferences in favor of the non-moving party. *Romanova v. Amilus Inc.*, 138 F.4th

104, 108 (2d Cir. 2025).  To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 854 (2d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . [the standard] requires more than labels[,] conclusions, and a formulaic recitation of the elements of a cause of action . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted).  "The Court's charge in ruling on a Rule 12(b)(6) motion 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'"  *Jennings v. Hunt Companies, Inc.*, 367 F. Supp. 3d 66, 69 (S.D.N.Y. 2019) (quoting *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 176 (2d Cir. 2004)).  Yet "[i]f counter-claimants have 'not nudged their claims across the line from conceivable to plausible, their [counterclaims] must be dismissed.'"  *Zurich Am. Life Ins. Co. v. Nagel*, 571 F. Supp. 3d 168, 176 (S.D.N.Y. 2021) (quoting *Twombly*, 550 U.S. at 570).  Indeed, "'naked assertion[s]' devoid of 'further factual enhancement' [are insufficient] to survive dismissal."  *Id.* at 175-76 (quoting *Twombly*, 550 U.S. at 557).

**DISCUSSION**

**A.    Subject Matter Jurisdiction**

As an initial matter, Finley argues that the Court lacks subject matter jurisdiction over the Counterclaims because the Answer provides no basis for its

3

assertion that the amount in controversy exceeds $75,000.  ECF No. 30 ("Mem.") at 19-20; *see* Ans., ¶ 111.  The Court need not reach this question, because it finds that it can exercise jurisdiction over the counterclaims regardless of whether the prerequisite for diversity jurisdiction has been met.  Where "there is no independent basis of federal jurisdiction over . . . counterclaims," the "question is whether the . . . counterclaims are compulsory or are permissive."  *United States ex rel. D'Agostino Excavators, Inc. v. Heyward-Robinson Co.*, 430 F.2d 1077, 1080 (2d Cir. 1970) (collecting cases).  If compulsory, no independent basis of federal jurisdiction is needed for the court to adjudicate the counterclaims.  *Berry v. City of New York*, No. 22-CV-05969 (MMG), 2024 WL 1908105, at *2 (S.D.N.Y. May 1, 2024).  "If the counterclaim is *not* compulsory but rather permissive, the Court must then determine whether it can and should exercise supplemental subject matter jurisdiction over the state law counterclaim pursuant to 28 U.S.C. § 1367(a)."  *Id.*; *see also Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 213 (2d Cir. 2004).

Under Rule 13(a), a counterclaim is compulsory if it "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim," and it "does not require adding another party over whom the court cannot acquire jurisdiction."  Fed. R. Civ. P. 13(a)(1)(A)-(B).  The word "transaction" is flexible in that it "may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship."  *Heyward-Robinson Co.*, 430 F.2d at 1081 (quoting *Lesnik v. Pub. Industrials Corp.*, 144 F.2d 968, 975 (2d Cir. 1944)).  As the veracity of Finley's assault allegations bears

directly on the viability of these counterclaims, the Court finds that these counterclaims are compulsory and thus exercises jurisdiction regardless of the asserted amount in controversy.

Alternatively, if the counterclaims were permissive, the Court finds that the exercise of supplemental jurisdiction under section 1367(a) is appropriate.  The claims undeniably stem from a "common nucleus of operative fact."  *Montefiore Med. Ctr. v. Teamsters Loc. 272*, 642 F.3d 321, 333 (2d Cir. 2011).  Moreover, none of the section 1367(c) factors that would warrant declining supplemental jurisdiction are implicated here.

The Court thus turns to whether the counterclaims have been adequately pleaded.

**B.    Tortious Interference with Contract**

To state a claim for tortious interference with contract under New York law, Przybylowski must plausibly plead the following elements:  "(1) the existence of a valid contract between [himself] and a third party; (2) [Finley's] knowledge of [that] contract; (3) [Finley's] intentional procurement of the third-party's breach of the contract without justification; (4) actual breach of the contract; and (5) damages resulting therefrom."  *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401-02 (2d Cir. 2006) (internal quotation marks omitted) (quoting *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d. 413, 424 (1996)).  As Przybylowski has not alleged facts sufficient to plausibly establish Finley's knowledge of any contract he may have

with Pomerantz LLP or a breach of that contract, this counterclaim must be dismissed.

### 1.    The Existence of a Valid Contract

Przybylowski avers that at the time Finley filed her Complaint, he "was employed by Pomerantz LLP and *as such*, his employment was established by contract." Ans., ¶ 154 (emphasis added). Przybylowski provides no further detail as to the terms or conditions of this contract—only that one existed because he was a law firm employee. *See id.*, ¶¶ 114-62. A reasonable inference can be drawn that, as a senior associate at a law firm, Przybylowski had an employment contract with Pomerantz LLP. Alternatively, a claimant subject to an at-will employment relationship still retains certain rights under New York law, including the right to maintain an action for tortious interference in certain limited situations, *Finley v. Giacobbe*, 79 F.3d 1285, 1294-95 (2d Cir. 1996) (collecting cases), such as where the tortfeasor is alleged to have interfered through fraudulent representations, threats, or breaches of a duty of fidelity, *Albert v. Loksen*, 239 F.3d 256, 274 (2d Cir. 2001). Accordingly, Przybylowski adequately pleads the existence of a contract.

### 2.    Finley's Knowledge

To successfully plead a tortious interference of contract claim, Przybylowski must allege Finley "had actual knowledge of the terms of the contract and of the contractual obligation that was allegedly breached." *Variblend Dual Dispensing Sys. LLC v. Crystal Int'l (Grp.) Inc.*, No. 18-CV-10758 (ER), 2022 WL 17156550, at *7 (S.D.N.Y. Nov. 22, 2022) (citation omitted). Indeed, "*actual* knowledge" is "an

6

essential element of the cause of action," and "an allegation that [Finley] 'should have known' of the existence of the contract is insufficient." *A A Tube Testing Co. v. Sohne*, 246 N.Y.S.2d 247, 248 (2d Dep't 1964); *see also Pelkowski v. Hovermann*, No. 20-CV-1845 (ENV) (RLM), 2021 WL 9032222, at *7 (E.D.N.Y. Sept. 9, 2021) (absence of "allegations that defendants specifically knew about any of the terms" of the contract at issue was a "deficiency" that was "fatal" to plaintiff's tortious interference with contract claim); *Wellington Shields & Co. LLC v. Breakwater Inv. Mgmt. LLC*, No. 14-CV-7529 (RJS), 2016 WL 5414979, at *4 (S.D.N.Y. Mar. 18, 2016) (collecting cases); *Medtech Prods. Inc. v. Ranir, LLC*, 596 F. Supp. 2d 778, 797 (S.D.N.Y. 2008) (dismissing tortious interference with contractual relations claim after finding "inadequate the general claim of [the defendant's] knowledge of the contracts" because allegations did not support that the defendant "was aware of the limitations" the contracts imposed).

Finley's own allegations confirm she was aware at the time she filed her Complaint that Przybylowski worked for Pomerantz LLP. *See* Compl. at 2 ("[Przybylowski] is currently a senior Associate at Pomerantz LLP, where he has had a successful career in securities litigation."). But Przybylowski's counterclaim is devoid of any allegation that Finley had knowledge of the terms and conditions of any employment contract Przybylowski might have with Pomerantz LLP, let alone the contract provision that was allegedly breached. Indeed, as discussed *infra*, his counterclaim does not specify the contractual provision that was breached.

Przybylowski argues that "[a]ctual knowledge may be pleaded generally and inferred from context." ECF No. 32 ("Opp'n") at 6. This is not a correct statement of the law. While "New York law does not require that Plaintiff plead perfect or precise knowledge of the terms and conditions of the contracts at issue, Plaintiff's allegations must show that Defendants had *some* knowledge of the terms and conditions of the allegedly-interfered-with contract." *YCF Trading Inc. v. Skullcandy, Inc.*, 781 F. Supp. 3d 56, 87 (E.D.N.Y. 2025) (cleaned up); *see also Doe v. St. Lawrence Univ.*, No. 23-CV-00426 (BKS) (DJS), 2024 WL 1116454, at *26-27 (N.D.N.Y. Mar. 14, 2024) (dismissing tortious interference counterclaim under similar fact pattern where counterclaim-plaintiff failed to identify relevant terms of contract at issue). Przybylowski is therefore required to include allegations "from which the Court can 'impute' to" Finley the knowledge of the contractual provisions which were allegedly breached. *YCF Trading*, 781 F. Supp. 3d at 87 ("The Court is required to draw all reasonable inferences in favor of the Plaintiff, but Plaintiff must plead factual content that allows the Court to draw the reasonable inference that Defendants knew that the [contract] and Paragraph S-1.2 in particular governed Plaintiff and Amazon's business relationship or Plaintiff's selling privileges." (cleaned up)); *see also Taboola, Inc. v. Ezoic Inc.*, No. 17-CV-9909 (PAE) (KNF), 2020 WL 3965308, at *7 (S.D.N.Y. Feb. 21, 2020) (holding that allegations must include factual assertions "identifying the source of its information and the grounds for its belief"), *report and recommendation adopted*, No. 17-CV-9909 (PAE) (KNF), 2020 WL 1900496 (S.D.N.Y. Apr. 17, 2020).

*Elliot v. City of New York* is not to the contrary. Przybylowski cites *Elliot*, Opp'n at 6, for the proposition that a pleading "may be supported by showing any set of facts consistent with the allegations in the complaint," No. 06-CV-0296 (KMK), 2008 WL 4178187, at *4 (S.D.N.Y. Sep. 8, 2008) (citation omitted). Yet Przybylowski has alleged *no* set of facts to support his claims. As such, Przybylowski's counterclaim does not adequately plead a claim for tortious interference of contract.

### 3.    Intentional Procurement

"New York law emphasizes the requirement that a tortious interference with contract claimant establish that the defendant purposefully intended to cause a contract party to breach a particular contract." *Conte v. Emmons*, 895 F.3d 168, 172 (2d Cir. 2018). Indeed, "the target of [a defendant's] conduct [must be the third party's] contractual arrangements with [the plaintiff]." *State St. Glob. Advisors Tr. Co. v. Visbal*, 431 F. Supp. 3d 322, 350 (S.D.N.Y. 2020) (quoting *G.K.A. Beverage Corp. v. Honickman*, 55 F.3d 762, 767-68 (2d Cir. 1995)); *see also Prospect Funding Holdings, LLC v. Vinson*, 256 F. Supp. 3d 318, 327-28 (S.D.N.Y. 2017) ("a plaintiff must allege facts showing that the defendant's objective was to procure such a breach" (cleaned up)).

Przybylowski's counterclaim must therefore include non-conclusory allegations that plausibly suggest that Finley "actually *intended* to procure the breach of those contracts." *Harris v. Queens Cnty. Dist. Att'y's Off.*, No. 08-CV-1703 (CBA) (LB), 2009 WL 3805457, at *11 (E.D.N.Y. Nov. 9, 2009); *see also Ganske v.*

9

*Mensch*, 480 F. Supp. 3d 542, 557 (S.D.N.Y. 2020) ("Plaintiff's complaint is devoid of any plausible allegation that Defendant intended to interfere with his employment contract with the AP."). The counterclaim contains no such allegations, but instead relies upon a conclusory assertion of intent. The counterclaim does not, for example, allege that Finley communicated with Przybylowski's employer or otherwise took steps to bring her allegations to its attention. It does not allege a plausible motive for her alleged intent to have Przybylowski terminated from his position. To the contrary, the counterclaim suggests that Finley's motive in bringing her suit was because she wanted to profit from the success of his career. Ans., ¶ 148. "Nothing in the allegations may reasonably be read to suggest that the target of [Finley's] conduct was [Przybylowski's] contractual arrangements with [Pomerantz LLP]." *G.K.A. Beverage*, 55 F.3d at 768.

### 4.    Breach of Contract

Przybylowski's tortious interference claim fails for the additional reason that he has failed to plead a breach of contract. He alleges only that his employment contract was terminated. Ans., ¶ 158. He provides no detail as to any term of his employment contract or how his termination breached that contract. Absent such allegations, he cannot maintain a claim for tortious interference with contract. *See, e.g., Lodging Sols., LLC v. Miller*, No. 19-CV-10806 (AJN), 2020 WL 6875255, at *5 (S.D.N.Y. Nov. 23, 2020) ("Because Plaintiff has failed to allege a claim for breach of the employment contract, the tortious interference claim fails as well."); *Ganske v. Mensch*, 480 F. Supp. 3d 542, 556 (S.D.N.Y. 2020) ("In order to state a claim for

10

tortious interference with a contract, the plaintiff is required to identify a specific contractual term that was breached." (cleaned up)).

## C.    Intentional Infliction of Emotional Distress

In New York, "a claim for intentional infliction of emotional distress [("IIED")] requires a showing of (1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." *Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir. 1999).  As Przybylowski cannot satisfy the first of these prongs, his IIED counterclaim must be dismissed.  "IIED is a highly disfavored cause of action under New York law, one that is almost never successful." *Coleman v. Grand*, 523 F. Supp. 3d 244, 266 (E.D.N.Y. 2021) (cleaned up), *aff'd*, 158 F.4th 132 (2d Cir. 2025).  "Claims typically fail as a matter of law on the first element." *Id.*  This is in part because "New York sets a high threshold for conduct that is 'extreme and outrageous' enough to constitute intentional infliction of emotional distress." *Bender v. City of New York*, 78 F.3d 787, 790 (2d Cir. 1996) (citation omitted).  To satisfy this standard, conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Stuto*, 164 F.3d at 827 (citation omitted).

Przybylowski proffers that "[b]y filing a public Complaint full of lies against Przybylowski, Finley engaged in extreme and outrageous conduct that exceeded all possible bounds of decency." Ans., ¶ 165.  "[I]t is well established that under New

York law," however, that "the commencement of litigation, whether civil or criminal, cannot form the basis for an IIED claim," *Franco v. Diaz*, 51 F. Supp. 3d 235, 243 (E.D.N.Y. 2014) (citing *Walentas v. Johnes*, 683 N.Y.S.2d 56, 58 (1st Dep't 1999) (collecting cases)), "even if alleged to be for the purpose of harassment and intimidation," *Walentas*, 683 N.Y.S.2d at 58.

"Even assuming [Finley's] accusation was false, false accusations of criminal conduct, or conduct that society deems reprehensible, do not inherently establish IIED." *Truman v. Brown*, 434 F. Supp. 3d 100, 119 (S.D.N.Y. 2020); *see also Nungesser v. Columbia Univ.*, 169 F. Supp. 3d 353, 374-75 (S.D.N.Y. 2016) (dismissing IIED claim against university for its treatment of plaintiff accused of rape, explaining that "even a false charge of sexual harassment does not rise to the level of outrage required" (citation omitted)); *Wolff v. City of New York Fin. Servs. Agency*, 939 F. Supp. 258, 264 (S.D.N.Y. 1996) (dismissing IIED claim where defendant falsely accused plaintiff of sexual harassment); *Mohamed v. Marriott Int'l, Inc.*, 905 F. Supp. 141, 157-58 (S.D.N.Y. 1995) (dismissing IIED claim where defendant falsely accused plaintiff of stealing to pay credit card debt); *Herlihy v. Metro. Museum of Art*, 633 N.Y.S.2d 106, 114 (1st Dep't 1995) (dismissing IIED claim where plaintiff alleged that defendant falsely accused her of using ethnic slurs); *Evans ex rel. JLE v. Anderson*, No. 23-CV-8230 (ST), 2025 WL 964112, at *2-3 (E.D.N.Y. Mar. 31, 2025) (finding counterclaim-plaintiff only "*narrowly*" alleged extreme and outrageous conduct where counterclaim-defendant called claimant a "child molester" who would "never be allowed to work with

children, single women, nor families again;" demanded $41,803; stated he would be "arrested, tried, and convicted;" wrote to CEO of claimant's company that claimant was a "child molester," a "pedophile," and "took nude photographs" of and "masturbated in front of" a minor; emailed another employer saying defendant was a "predator," "pedophile," and "manipulative and sadistic monster;" threatened to call Child Protective Services ("CPS"); notified his family, friends, and employers; reported him to CPS, after which he lost two jobs; and filed the instant civil lawsuit (emphasis added)) (pending disposition of report and recommendation). Limited cases in this District finding properly-alleged IIED claims involve allegations of aggravating conduct by the non-movant beyond the commencement of litigation that is lacking in this case. *See, e.g.*, *Roelcke v. Zip Aviation, LLC*, 571 F. Supp. 3d 214, 235-36 (S.D.N.Y. 2021) (denying motion for summary judgment against IIED claim where jury could reasonably find that, in addition to publicly disseminating fabricated physical and sexual assault allegations against movant and maliciously subjecting movant to judicial and administrative proceedings based on false pretenses, non-movant sent harassing communications to movant's ex-wife and ex-sister-in-law).

Given overwhelming caselaw to the contrary, Finley's Complaint itself cannot constitute extreme and outrageous conduct, though it may be part of such a finding if combined with other factors. The Second Circuit has suggested that sufficient additional outrageous behavior could be "some combination of [alleged] public humiliation, . . . verbal abuse or harassment, physical threats, *permanent* loss of

13

employment, or conduct contrary to public policy" with false accusations of criminal conduct. *Stuto*, 164 F.3d at 828-29 (collecting cases) (emphasis added). Beyond Finley's filing of the instant suit, however, Przybylowski vaguely alleges only that "[o]n information and belief . . . Finley has spread the false allegations to numerous third parties leading up to the filing of her Complaint, stating that Przybylowski raped her." Ans., ¶ 147. Yet the counterclaim does not specify who these "third parties" are, or the circumstances in which Finley purportedly made these statements. While it is true that "a deliberate and malicious campaign of harassment or intimidation" mitigates IIED's "strict, rigorous[,] and difficult to satisfy" standard, Przybylowski has not alleged facts sufficient to show that Finley engaged in such a "campaign." *Rich v. Fox News Network, LLC*, 939 F.3d 112, 122-23 (2d Cir. 2019) (quoting *Scollar v. City of New York*, 74 N.Y.S.3d 173, 178 (1st Dep't 2018)).

Accordingly, Finley's filing of the instant suit, and repeating its contents to unspecified third parties, does not meet the strict and rigorous standard for extreme and outrageous conduct under New York law. This counterclaim, too, is dismissed.

## D.    Leave to Amend

In the alternative, Przybylowski seeks leave to amend his counterclaim, arguing that leave to amend should be freely granted under the liberal standard established under Rule 15(a)(2). Opp'n at 10. He does not acknowledge, however, that the Case Management Plan entered in this case set a deadline of December 26, 2025, for motions to amend the pleadings outside the parameters of Rule 15(a)(1).

14

ECF No. 24, ¶ 4. While Rule 15(a)(2) provides that "the court should freely give leave when justice so requires," Fed. R. Civ. P. 15(a)(2), Rule 16's good cause standard applies when a scheduling order sets a deadline for amendment of pleadings, *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000).

Finley points to the procedural history in this case in arguing that Przybylowski has not exercised the due diligence required for a showing of good cause. ECF No. 33 ("Reply") at 7-8. A waiver of service was executed in this case on August 11, 2025. ECF No. 8. Plaintiff moved for default on October 13, 2024. ECF Nos. 11-13. Defendant moved to vacate the Clerk's Certificate of Default the following day, ECF No. 14, citing attorney error, ECF No. 14-1 at 1, and attached a Proposed Answer that did not include the current counterclaims, *see generally* ECF No. 14-7. On November 24, 2025, the Court granted Defendant's motion to vacate the Clerk's Certificate of Default and the docketing of Defendant's proposed answer by December 5, 2025. ECF No. 23. The parties met for an initial pretrial conference on November 25, 2025, at which they discussed their Proposed Case Management Plan and Scheduling Order, which was finalized and docketed that same day. *See* ECF Nos. 21-1, 24. On December 5, 2025, Defendant filed the revised Answer with counterclaims. Ans. Finley filed her motion to dismiss the counterclaims on December 29, 2025. Mot.

Finley avers that Przybylowski should not be permitted to amend his counterclaim because he has not acted with due diligence, as law firm error resulted in his delayed appearance in this case and his Answer already differs from his

proposed answer. Reply at 8-9. Yet this record does not demonstrate a lack of due diligence. As an initial matter, "[t]he mere fact that the Defendant neglected to include a counterclaim in [his] initial or first amended answer does not translate to a finding of bad faith" sufficient to deny a motion to amend under Rule 15(a)(2). *Prompt Nursing Emp. Agency LLC v. Valdez*, 222 F. Supp. 3d 194, 201 (E.D.N.Y. 2016). Moreover, the deadline for the amendment of pleadings had already passed at the time Finley filed her motion to dismiss the counterclaims. Przybylowski sought leave to amend when opposing the motion to dismiss, his first opportunity to do so in response to the motion to dismiss. "Ordinarily a plaintiff should be granted leave to amend at least once after having the benefit of a court's reasoning in dismissing the complaint." *Obra Pia Ltd. v. Seagrape Invs. LLC*, No. 19-CV-7840 (RA), 2021 WL 1978545, at *3 (S.D.N.Y. May 18, 2021). "This is especially true on the Court's first ruling on a motion to dismiss." *New York Communities for Change v. New York State Unified Ct. Sys./Off. of Ct. Admin.*, 680 F. Supp. 3d 407, 415 (S.D.N.Y. 2023). Accordingly, Przybylowski shall be permitted to file an amended Answer by no later than 30 days of the date of the Opinion and Order.

## CONCLUSION

Accordingly, Finley's motion to dismiss is **GRANTED**. Any Amended Answer must be filed within 30 days of the date of this Opinion and Order. The

Clerk of Court is directed to terminate ECF No. 29.

      SO ORDERED.

Dated:  April 15, 2026
         New York, New York

                              JEANNETTE A. VARGAS
                              United States District Judge